IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

EMORY STEVE BROWN,      *     CASE NUMBER:
                      *     3:05-CV-00681-WKW
      Plaintiff,        *
                      *
v.                  *
                      *
CLAIMS MANAGEMENT, INC.,   *
                      *
      Defendant.      *

DEFENDANT CLAIMS MANAGEMENT, INC.'S
MOTION FOR SUMMARY JUDGMENT AND BRIEF

Comes Now the defendant, Claims Management, Incorporated (hereinafter referred to as the defendant Claims Management), and hereby moves this court for a summary judgment pursuant to Rule 56 (c) of the Federal Rules of Civil Procedure on the grounds that there is no genuine issue as to any material fact and that the defendant Claims Management is entitled to judgment as a matter of law.

This motion is based on the pleadings, responses to discovery, the deposition of the plaintiff, Emory Steve Brown, the deposition of Victoria Heppes-Greenspan, the deposition of Amy C. Miller, other materials of record in this case, and the following brief in support of this motion.

NARRATIVE STATEMENT OF UNDISPUTED FACT

On September 28, 2004, the plaintiff, Emory Steve Brown, was employed by

1

Wal-Mart Stores East, LP.  (Complaint; Statement of Facts, ¶ 3).  On that date, the plaintiff injured his right shoulder while unloading a produce truck at the Wal-Mart store located in Roanoke, Alabama.  (Brown Dep., p. 43, ln. 10-23).  The plaintiff first received treatment for his shoulder injury at the Randolph Medical Center Emergency Room on September 28, 2004, where he was given pain medication and x-rays were taken.  (Brown Dep., p. 50, ln. 5-6).

Claims Management, Inc., is the administrator of workers' compensation claims for Wal-Mart Stores East, LP.  (Heppes Dep., p. 2, ln. 19-21).  Victoria Heppes-Greenspan was the claims adjuster employed by the defendant Claims Management and designated to handle the plaintiff's file.  (Complaint; Statement of Facts, ¶ 12).  An appointment was arranged for the plaintiff to visit the office of Mitchell Shirah, M.D., Roanoke Family Care, Roanoke, Alabama, on October 4, 2004.  (Brown Dep., pp. 51-53, ln. 15-17; Heppes Dep., p. 215, Pl. ex 4).  The plaintiff was diagnosed with a severe shoulder sprain, was given pain medication, and advised to follow-up in four days.  (Heppes Dep., p. 215, Pl. ex. 4).

The plaintiff returned to Dr. Shirah's office on October 8, 2004.  (Heppes Dep., p. 215, Pl. ex. 4).  Upon examination by Dr. Shirah, the plaintiff's condition appeared to be "essentially unchanged."  (Heppes Dep., p. 215, Pl. ex. 4).  The doctor diagnosed a severe sprain of the right shoulder, but noted, "Cannot rule out rotator cuff tear." (Heppes Dep., p. 215, Pl. ex. 4).  The doctor advised the plaintiff to continue

2

with present mediations and to return to light duty work on October 10, 2004.  (Brown Dep., p. 54-56, ln. 3-19; Heppes Dep., p. 215, Pl. ex. 4).   An MRI would be considered if symptoms persisted without improvement.  (Heppes Dep., p. 215, Pl. ex. 4).

On October 15, 2004, the plaintiff's condition was such that Dr. Shirah felt than an MRI was needed.  (Heppes Dep., p. 216, Pl. ex. 4).  An MRI was ordered by Dr. Shirah on October 15, 2004, and promptly approved by Ms. Heppes-Greenspan on behalf of the defendant Claims Management.  (Heppes Dep., pp. 78-79, ln. 15 -7; pp. 119-120, ln. 9-9; p. 216, Pl. ex. 4).  On October 19, 2004, the plaintiff presented at Open MRI Diagnostic Imaging in Oxford, Alabama, for an MRI examination of his right shoulder.  (Heppes Dep., p. 221, Pl. ex. 8).  The MRI revealed a tear of the anterior portion of the supraspinatus tendon, a subchondral cyst in the greater tuberosity, a tear of the anterosuperior aspect of the labrum, advanced degenerative changes of the AC joint with impingement, and subacromial bursitis.  (Heppes Dep., p. 221, Pl. ex. 8).

On October 22, 2004, the plaintiff returned to Dr. Shirah for a follow-up appointment.  (Heppes Dep., p. 216, Pl. ex. 4).  Upon examination, the plaintiff's condition appeared unchanged.  (Heppes Dep., p. 216, Pl. ex. 4).  The doctor reviewed the results of the plaintiff's MRI and diagnosed a right rotator cuff tear.  (Heppes Dep., p. 215, pl. ex. 4).  At that point, Dr. Shirah recommended that the

3

plaintiff be "referred to an orthopedist of the company's choice." (Heppes Dep., p. 216, Pl. ex. 4).   Upon consultation between the doctor's office and Ms. Heppes-Greenspan, the plaintiff was initially to be referred to an orthopedist in Gadsden, Alabama.   Upon the plaintiff's complaint that the distance between Gadsden and his home in Roanoke was too far, Ms. Heppes-Greenspan immediately arranged for an appointment with Graham Howorth, M.D., of Alexander City Orthopaedics in Alexander City, Alabama.   (Brown Dep., pp. 59-60, ln. 15-20; Heppes Dep., p. 31, ln. 12-24).

The plaintiff's appointment with Dr. Howorth was arranged for October 27, 2004.  (Heppes Dep., p. 229, Pl. ex. 12).   Upon physical examination of the plaintiff and review of his x-ray and MRI films, Dr. Howorth diagnosed the plaintiff with an "[a]cute tear of the supraspinatus, rotator cuff."  (Heppes Dep., p. 229, Pl. ex. 12).   In his notes, Dr. Howorth recommended "immediate arthroscopy & rotator cuff repair. He is 4 weeks post injury, and it is much better to proceed with rotator cuff reconstruction within the first 6 weeks during the acute phase, as the results are more predictable." (Heppes Dep., p. 229, Pl. ex. 12).   Dr. Howorth also recommended a preoperative range of motion and strengthening program for the purpose of improving the plaintiff's range of motion and for the plaintiff to become familiar with his postoperative exercise program.  (Heppes Dep., p. 229, Pl. ex. 12).   However, the plaintiff Brown refused to participate in preoperative physical therapy.  (Brown Dep.,

pp. 68-69, ln. 15-19; pp. 77-79, ln. 23-4).

Ms. Heppes-Greenspan promptly faxed a surgery request form to Dr. Howorth's office on October 27, 2004, the date of the plaintiff's first appointment with Dr. Howorth. (Miller Dep., pp. 26-27, ln. 1-4; Def. ex. 2). The surgery request form contained basic information as to the plaintiff's injury, proposed treatment, and prognosis. (Miller Dep., p. 27, ln. 5-18; Def. ex. 2). Dr. Howorth completed and signed the surgery request, and dated it October 30, 2004. (Miller Dep., pp. 28-30, ln. 22-9; Def. ex. 2). Although the paperwork was signed and dated by Dr. Howorth on October 30, 2004, it was not faxed to Ms. Heppes-Greenspan at Claims Management until November 15, 2004. (Miller Dep., pp. 30-31, ln. 10-2; Def. ex. 2). A "Precert Information Sheet," signed and dated November 16, 2004, by Dr. Howorth's clinic assistant Amy Miller, indicates that the plaintiff's surgery was "Approved on 11-16-04." (Miller Dep., p. 25, ln. 5-25,; pp. 31-32, ln. 3-11; Def. ex. 1). In other words, the doctor's surgery request on behalf of the plaintiff was approved by Claims Management within approximately 24-hours of being transmitted by Miller to Claims Management. (Miller Dep., p. 25, 5-25,; pp. 31-32, ln. 3-11; Def. ex. 1).

Ms. Miller testified that, upon receiving approval from Claims Management, it was her responsibility to schedule the plaintiff's surgery. (Miller Dep., p. 34, ln. 10-22; p. 46, ln. 11-13; Def. ex. 2). She coordinated with Russell Hospital to schedule the plaintiff's surgery for November 29, 2004. (Miller Dep., pp. 40-43, ln. 20-10;

Def. ex. 3).    Ms. Miller testified that the 13-day period between the date of approval and the date of the surgery was not unusual.    (Miller Dep., pp. 36-37, ln. 25-16). Furthermore, it is important to note that the Thanksgiving holiday fell within this period, although Ms. Miller could not recall whether that affected the scheduling of the plaintiff's surgery.  (Miller Dep., pp. 32-33, ln. 19-6).    Ms. Miller stated that there are procedures whereby she can expedite a patient's surgery if she is so instructed by Dr. Howorth.    (Miller Dep., p. 37, ln. 17-20).    Ms. Miller does not recall having received any instruction from Dr. Howorth to expedite the plaintiff's surgery.    (Miller Dep., pp. 37-38, ln. 21-12).    The plaintiff's surgery was not expedited  (Miller Dep., pp. 37-38, 21-12).    Accordingly, the plaintiff underwent surgery as scheduled on November 29, 2004.

The plaintiff filed a bill of complaint in the Circuit Court of Randolph County, Alabama, on June 14, 2005, alleging counts of Fraud, Outrageous Conduct, and Suppression of Material Facts.  (Complaint).  On July 25, 2005, the case was timely removed by the defendant Claims Management to the United States District Court for the Middle District of Alabama.  (Notice of Removal).  On December 28, 2005, the plaintiff amended his complaint to allege an additional count of negligence against the defendant Claims Management.  (Amended Complaint).  The underlying substance of the four theories of recovery alleged in the plaintiff's complaint is that a negligent or intentional delay in processing or approving the plaintiff's request for surgery

proximately caused the plaintiff to experience a suboptimal outcome and recovery from the surgery, resulting in "permanent injury and disability … emotional distress and anxiety and physical pain and suffering."  (Complaint).   The defendant Claims Management has denied all of the plaintiff's allegations in this regard.  (Answer).

CITATION OF AUTHORITY AND ARGUMENT

I.  Standard For Granting Summary Judgment

Summary judgment is proper where the moving party demonstrates "that there is no issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).

The United States Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

> Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).

The party seeking summary judgment carries the burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the

moving party is entitled to judgment as a matter of law. Celotex, 477 U.S. at 323, 106 S. Ct. 2548. Once this initial demonstration under Rule 56(c) is made, the burden of production shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324, 106 S.CT. 2548; see also Fed.R.Civ.P. 56(e).

In meeting this burden, the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead the rational trier of fact to find for the non-moving party." Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. In the case at bar, the plaintiff cannot show that any genuine issue as to any material fact exists. Accordingly, the defendant's motion for summary judgment is due to be granted.

## II.  The Plaintiff's Claim For Fraud Fails As A Matter Of Law.

In Count One of the plaintiff's complaint, the plaintiff Brown alleges a claim for fraud against the defendant Claims Management. The plaintiff alleges that the defendant's agent, Victoria Heppes-Greenspan, who was the claims handler for the

plaintiff's workers' compensation file, represented to the Plaintiff that the in-house physician of the Defendant had stated that surgery on the Plaintiff was not medically necessary ...." (Complaint; Count One, ¶ 2).  The plaintiff further alleges that the representation was false, was known to be false by Ms. Heppes-Greenspan at the time she made the representation, and that the representation was made with the intent that the plaintiff would rely on it to his detriment.   (Complaint; Count One, ¶ 2-3). Noticeably absent from the complaint is the allegation that the plaintiff did in fact rely on the alleged representations, and there is no evidence to show that the plaintiff relied on the alleged representations.  Finally, the plaintiff states that he was damaged in that his surgery was not performed in a timely fashion, causing "permanent injury and disability" as well as "emotional distress and anxiety and physical pain and suffering." (Complaint; Count One, ¶ 5).

A.    The plaintiff's "fraud" claim is barred by the exclusivity provisions of the Alabama Workers' Compensation Act because the plaintiff is actually asserting a bad faith claim couched as a fraud claim.

As a general rule, the Alabama Workers' Compensation Act is the exclusive remedy available to injured employees in Alabama.  Section 25-5-52 of the Code of Alabama states:

> Except as provided in this chapter, no employee or any employer subject to this chapter, nor the personal representative, surviving spouse, or next of kin of the employee shall have a right to any other method, form, or

9

amount of compensation or damages for an injury or death occasioned by an accident or occupational disease proximately resulting from and while engaged in the actual performance of the duties of his or her employment and from a cause originating from such employment or determination thereof.

Code of Alabama (1975), § 25-5-2.

As indicated by its plain language, Section 25-5-2 has been held to bar virtually all causes of action by the employee against the employer, other than those available to the employee under the framework of the Workers' Compensation Act. Lackey v. Jefferson Energy Corp., 439 So.2d 1290 (Ala.Civ.App.1983). This exclusivity provision does not necessarily shield the employer from the entire field of tort law, however. The Alabama Supreme Court has carved out an exception whereby an employee's cause of action based on allegations of intentional tortious conduct, such as fraud, will not be barred. Lowman v. Piedmont Executive Shirt Mfg. Co., 547 So.2d 90 (Ala.1989). Although a cause of action for fraud may be brought under certain limited circumstances, the Alabama Supreme Court has held that claims for bad faith in denying workers' compensation benefits are barred by the exclusivity of remedy provisions of the Workers' Compensation Act. Stewart v. Matthews Industries., Inc., 644 So.2d 915 (Ala.1994). Wooley v. Shewbart, 569 So.2d 712 (Ala.1990); Nabors v. St. Paul Insurance Co., 489 So.2d 573 (Ala.1986); Garvin v. Shewbart, 442 So.2d 80 (Ala.1983).

In Hobbs v. Alabama Power Company, 775 So.2d 783 (Ala.2000), the plaintiff-

10

employee filed a fraud claim against her employer based on the employer's requirement that the employee file her claim for surgery against her personal health insurance because it was believed to be based on a preexisting condition and not work related. Id. at 784-785.  The plaintiff alleged that her treatment was delayed due to the allegedly false and fraudulent representations of her employer that her injuries were not covered by workers' compensation and should be covered by her personal health insurer.  Id. at 786.  The trial court granted the defendant's motion for summary judgment, stating, "[I]f the denial of workers' compensation benefits can give rise to a claim by the employee against his employer that the employer was guilty of fraud  in denying her claim, the 'bad faith' exclusion is rendered meaningless.  The Supreme Court of Alabama could not have intended such an illogical result."  Id. at 787.

The Supreme Court agreed with the trial court's interpretation and affirmed summary judgment for the defendants.  The Court noted, "In workers' compensation litigation, an employee and the employer often contest the question whether the employee's medical problem is the result of an independent preexisting condition, or is the result of an aggravation of a preexisting condition by a compensable injury."  Id. at 788, citing, § 25-5-58, Ala.Code (1975), and the cases cited in annotations in Alabama Digest, Workers' Compensation § 522.

It is important to note in the case at bar that the defendant Claims Management never denied the plaintiff's request for surgery.  The defendant simply was not in a

position to approve or deny the plaintiff's request because the defendant did not receive the surgery request concerning the plaintiff for some 19 days following the plaintiff's initial appointment with Dr. Howorth. (Miller Dep., pp. 30-31, ln. 10-2; Def. ex. 2). Once the surgery request was received by the defendant Claims Management, on November 15, 2006, the defendant promptly reviewed the request and approved the plaintiff's surgery request within 24-hours. (Miller Dep., p. 25, 5-25; pp. 31-32, ln. 3-11; Def. ex. 1). Thus, just as the Hobbs court recognized that it is reasonable to expect that an employer and employee will sometimes contest whether an employee's medical problem is based on a preexisting, non-work related injury, it is also reasonable to expect that an employer's workers' compensation administrator may require certain documentation containing basic information as to the nature of the plaintiff's injury and the medical treatment required be completed before approving a surgical procedure. The defendant Claims Management submits that the plaintiff's "fraud" claim is exactly what the Court considered in Hobbs. Hobbs dealt with the alleged denial of a surgery request, although the defendant maintains a denial never occurred. The case at bar deals with the denial of a surgery request. Accordingly, the claim of the plaintiff Brown is not actually a fraud claim but is instead a "bad faith" claim which is barred by the exclusivity provisions of the Workers' Compensation Act. Summary judgment on the plaintiff's "fraud" claim is due to be granted.

    B.    Should the Court find that the plaintiff has correctly alleged fraud,

the plaintiff's claim still fails as the plaintiff cannot present clear and convincing evidence as required by Alabama law.

As stated earlier, under certain limited circumstances, an employee's cause of action based on allegations of intentional tortious conduct, such as fraud, will not be barred by the exclusivity provisions of Alabama's Workers' Compensation Act. Lowman v. Piedmont Executive Shirt Mfg. Co., 547 So.2d 90 (Ala.1989). Although a cause of action for fraud may be brought, the standard of proof is much more stringent in a cause of action brought by an employee against an employer. The Lowman court held that for an employee-plaintiff to present to a jury a fraud claim brought against his employer, fellow employee, or employer's insurer, the employee-plaintiff must present evidence that if accepted and believed by the jury would qualify as clear and convincing proof of fraud. Id. at 95, [emphasis added]. The Supreme Court of Alabama has taken this stand requiring a heightened standard of proof "in view of the exclusivity clause" as well as "[i]n order to ensure against borderline or frivolous claims." Id.

The plaintiff in the case at bar cannot present clear and convincing proof of fraud. Under Alabama law, in order to recover for fraud, the plaintiff must prove: (1) a misrepresentation of a material fact, (2) made willfully to deceive, recklessly, without knowledge, or mistakenly, (3) which was justifiably relied on by the plaintiff under the circumstances, and (4) which caused damage as a proximate consequence." Foremost

13

Insurance Co. v. Parham, 693 So.2d 409, 422 (Ala.1997), citing, Ala. Code § 6-5-101 (1975).  Accordingly, in the case now before the court, the plaintiff Brown must prove by clear and convincing evidence that (1) that claims handler Victoria Heppes-Greenspan, acting as an agent or servant for the defendant Claims Management, misrepresented a material fact; (2) that said representation by Ms. Heppes-Greenspan was made willfully to deceive, recklessly, without knowledge, or mistakenly; (3) that the plaintiff Brown justifiably relied upon Ms. Heppes-Greenspan's misrepresentation; and (4) that plaintiff Brown was damaged as a proximate result of said misrepresentation.

In addition, because the alleged fraud consists of a promise to perform future acts, the plaintiff Brown must also establish by clear and convincing evidence that the defendant Claims Management had a present intent to deceive at the time that the alleged promise was made.  First Bank of Boaz v. Fielder, 590 So.2d. 893, 897 (Ala.1991).  In First Bank of Boaz, the Alabama Supreme Court addressed the nature of this variety of fraud, known as promissory fraud, stating:

> the only basis upon which one may recover for fraud, where the alleged fraud is predicated on a promise to perform or abstain from some act in the future … is when the evidence shows that, at the time … the promises of future action or abstention were made, the promisor had no intention of carrying out the promises, but rather had a present intent to deceive.
>
> Id., citing Waters v. Lawrence County, 551 So.2d 1011, 1014 (Ala.1989); Hearing Systems, Inc. v. Chandler, 512 So.2d 84, 87 (Ala.1987); Robinson v. Allstate Insurance Co., 399 So.2d 288 (Ala.1981).

14

1.  There is no evidence Ms. Heppes-Greenspan made a false representation with the intent to deceive the plaintiff.

The plaintiff alleges that on October 27, 2004, Dr. Howorth scheduled the plaintiff's surgery for Monday, October 31, 2004, but that Ms. Heppes-Greenspan cancelled the surgery because the company doctor had said the surgery was not medically necessary and because the defendant wanted additional medical opinions regarding the same." (Complaint; Statement of Facts, ¶ 12; Count One, ¶ 2; Brown Dep., pp. 146-147, ln. 1-18). The facts, however, reveal a markedly different story. The evidence shows that the defendant Claims Management, through its agent Ms. Heppes-Greenspan, contacted Dr. Howorth's office on the date of the plaintiff's first scheduled appointment, October 27, 2004, and faxed a surgery request form for Dr. Howorth to complete and return. (Miller Dep., pp. 26-27, 1-4; Miller Dep., Def. ex. 2). The plaintiff alleges that on the date of his initial appointment with Dr. Howorth, the doctor's office scheduled him for surgery to take place within the next week, only to have the appointment cancelled by Ms. Heppes-Greenspan later on that same date. (Brown Dep., pp. 69-70, ln. 20-23; pp. 143-146, ln. 23-11). This allegation is absolutely not correct. Dr. Howorth's clinic assistant, Amy Miller, testified that surgery was not scheduled on October 27, 2004, because the surgery request had not yet been approved by the defendant Claims Management. (Miller Dep., pp. 33-34, ln.

15

17-5).    According to the testimony of Ms. Miller, an independent and disinterested third-party, it would have been impossible for Ms. Heppes-Greenspan to cancel the plaintiff's surgery because the surgery had not yet been scheduled. (Miller Dep., pp. 33-34, ln. 17-5). In fact, there is no record of surgery being scheduled for any date prior to November 29, 2004. (Miller Dep., pp. 33-34, ln. 17-5; p. 43, 11-24; Def. ex. 3). The plaintiff is obviously mistaken in his recollection. The surgery was never scheduled as claimed by the plaintiff, and consequently could not have been cancelled.

The evidence further shows that although it appears that Dr. Howorth completed the surgery request paperwork on behalf of the plaintiff on October 30, 2004, it is clear that the form was not returned by Dr. Howorth's office to Ms. Heppes-Greenspan until November 15, 2004. (Miller Dep., pp. 30-31, ln. 10-2; Def. ex. 2). As such, the defendant Claims Managment, acting through Ms. Heppes-Greenspan, did not possess sufficient information to approve, deny, or otherwise make a determination as to the plaintiff's surgery request until November 15, 2004. Therefore, it is impossible that Ms. Heppes-Greenspan could have made the alleged fraudulent representations to the plaintiff prior to November 15, 2004, with "a present intent to deceive," as required under First Bank of Boaz, because Ms. Heppes-Greenspan was not in possession of sufficient information to make any type of representation to the plaintiff until that time. Furthermore, the evidence shows that Ms. Heppes-Greenspan called Dr. Howorth's office the next day, November 16, 2004,

16

with notification that the surgery had been approved.  (Miller Dep., p. 25, 5 - 25,; pp. 31-32, ln. 3-11; Def. ex. 1).

2.    There is no evidence that any conduct of the defendant Claims Management delayed the plaintiff's treatment or proximately caused any alleged injury.

The plaintiff alleges that as a proximate consequence of the alleged fraudulent conduct, he "did not have the surgery in a timely fashion."  (Complaint; Count One, ¶ 5).  The plaintiff further states that as a result of the alleged delay in scheduling his surgery, he "has suffered permanent injury and disability… [and] emotional distress and anxiety and physical pain and suffering."  (Complaint; Count One, ¶ 5).  The evidence shows that Dr. Howorth first evaluated the plaintiff on October 27, 2004, nearly one month after the occurrence of the plaintiff's injury.  (Heppes Dep., p. 229, Pl. ex. 12).  During this first month following injury, the plaintiff treated with Dr. Mitchell Shirah, who provided conservative care and treatment before referring the plaintiff to an orthopaedic specialist.  (Heppes Dep., pp. 215-216, Pl. ex 4).  The plaintiff's first appointment with the specialist, Dr. Howorth, occurred on October 27, 2004.  (Heppes Dep., p. 229, Pl. ex. 12).  The defendant Claims Management's agent, Victoria Heppes-Greenspan, faxed a surgery request form to Dr. Howorth's office on that date, and the doctor apparently completed and signed the form on October 30, 2004.  (Miller Dep., pp. 28-30, ln. 22-9; Def. ex. 2).  However, Dr. Howorth's office

did not return the surgery request paperwork until November 15, 2006, and the surgery was approved by the defendant Claims Management on November 16, 2006.  (Miller Dep., p. 25, 5-25; pp. 30-31, ln. 10-32; Def. ex. 1; Def. ex. 2).  Dr. Howorth's office assistant, Amy Miller, has testified that it was her responsibility to schedule the plaintiff's surgery, and she scheduled the surgery for November 29, 2006, the first available date following approval.  (Miller Dep., p. 34, 10 - 22; pp. 40-43, ln. 20-10; p. 46, 11-13; Def. ex. 2; Def. ex. 3).  The 13-day period between approval of the plaintiff's surgery and performance of the approved surgical procedure was absolutely normal, especially given the fact that the Thanksgiving holiday fell during this period (although Ms. Miller could not recall whether the holiday was a factor).  (Miller Dep., pp. 32-33, ln. 19-6; pp. 36-37, ln. 25-16).  Ms. Miller has clearly stated, contrary to plaintiff's Brown's assertion, that surgery was never scheduled to occur before November 29, 2004.  (Miller Dep., pp. 33-34, ln. 17-5).  Ms. Miller indicated that she would not have scheduled the plaintiff's surgery until receiving approval from Claims Management on November 16, 2004.  (Miller Dep., p. 34, 2-5).  Furthermore, the only record of any surgery being scheduled is the Russell Medical Center Surgery Scheduling Form, completed by Ms. Miller sometime on or after November 16, 2004.  (Miller Dep., pp. 33-34, ln. 17-5; p. 43, 11-24; Def. ex. 3).

Therefore, Ms. Heppes-Greenspan could not have cancelled a surgery that had not been approved.  The defendant Claims Management fulfilled its obligations to the

plaintiff by timely faxing a surgery request form and approving the plaintiff's surgery on the day after receiving the plaintiff's paperwork from Dr. Howorth's office. There was no delay in scheduling the plaintiff's surgery, but even if there was such delay, there is no evidence of improper conduct by defendant Claims Management which could have been responsible for causing such delay.

There are no cases under Alabama law which support recovery for the plaintiff under these facts. For instance, in Wiggins v. Risk Enterprise Management Limited, 14 F.Supp.2d 1279 (M.D.Ala.1998), the plaintiff sued the claims administrator for her workers' compensation insurance carrier alleging (among other counts) fraud/misrepresentation. The trial court granted the defendant's motion for summary judgment. The court noted the defendant's argument that it was impossible for the claims administrator to have made any misrepresentations in 1990 to the plaintiff with a present intent to deceive her regarding future payment of her medical bills because the defendant did not take over administration of the plaintiff's claims until 1995. Id. at 1288-1289. Similarly, in plaintiff Brown's case, it is impossible for the defendant Claims Management to have made any misrepresentations to the plaintiff about having to cancel surgery until the plaintiff's information could be reviewed by additional persons because it is clear that the surgery was never scheduled by Dr. Howorth's office until or after November 16, 2004. (Miller Dep., pp. 33-34, ln. 17-5; p. 43, 11-24; Def. ex. 3). If the surgery was not scheduled until November 16, 2004, then it

19

could not have been cancelled prior to that time and no fraudulent assertion could have been made by the plaintiff.  Because the plaintiff cannot show by clear and convincing evidence that the defendant Claims Management engaged in any conduct which would satisfy the elements of fraud, it is clear the defendant Claims Management is entitled to summary judgment as to Count One of the plaintiff's complaint alleging fraud.

III.  The Plaintiff's Claim For Outrageous Conduct Fails As A Matter Of Law.

The second count of the plaintiff's complaint alleges outrageous conduct on the part of the defendant Claims Management.  The complaint states that the conduct of the defendant Claims Management "in not allowing [the plaintiff] to have surgery which Doctor Howorth had said was immediately necessary" was outrageous.  (Complaint; Count Two, ¶ 2).  The plaintiff further alleges that the defendant Claims Management had no medical basis for denial of the surgery, and the reason for the plaintiff's denial was "simply to withhold medical care and treatment from the Plaintiff…."  (Complaint; Count Two, ¶ 3-4).  The plaintiff alleges that as a result of the defendant Claims Management's outrageous actions, the plaintiff did not have his shoulder surgery in a timely fashion, suffered permanent injury and disability, and suffered emotional distress, anxiety, and physical pain and suffering.  (Complaint; Count Two, ¶ 5).

The defendant Claims Management acknowledges that Alabama courts have held that tort claims filed by employees alleging outrageous conduct against their employer

or employer's insurer are permissible.   The Alabama Supreme Court first recognized the tort of outrage in American Road Service v. Imon, 394 So.2d 361 (Ala.1981), stating, "[O]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and for bodily harm resulting from the distress."  Id. at 365.

Drawing from the Restatement (Second) of Torts, the court emphasized the extreme nature of the conduct required and the severity of the emotional distress expected to be endured, quoting from the Restatement as follows:

> The emotional distress thereunder must be so severe that no reasonable person could be expected to endure it.   Any recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme.   Comment, Restatement, supra. at 78.   By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.   Comment (d), Restatement, supra., at 72.

Id.

Although outrage was recognized as a cause of action, the Court cautioned  that the tort was not meant to allow recovery for "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."   Id.at 364-365.   Following its recognition in Imon, the Court "has consistently held that the tort of outrage is available in only the most egregious circumstances.  As a consequence, this Court has held in a large majority of the outrage cases reviewed that no jury question was

presented." Thomas v. BSE Industrial Contractors, Inc., 624 So.2d 1041, 1044 (Ala.1993). In fact, outrage is usually not found unless the case deals with improper handling of a burial, extreme tactics in attempting to coerce a settlement, or extreme sexual harassment. Id. at 1044. Furthermore, in the workers' compensation context, the court has stated that "we are constrained, in accomodation to the exclusivity provisions of the Act, to rule out all questionable claims." Lowman v. Piedmont Executive Shirt Mfg. Co., supra. at 95.

In 1990, the Alabama Supreme Court reviewed a case that has established the benchmark for conduct required to state a cause of action based on outrageous conduct. Continental Casualty Insurance Company v. McDonald, 567 So.2d 1208 (Ala.1990). In McDonald, the carrier was found to have purposefully engaged in a pattern of delay in paying medical bills and other benefits for a period of five years with the intent to pressure the employee into accepting a settlement of his claim. Id. at 1212-1216. [Emphasis added]. The defendant was unable to give a reasonable explanation for the delays and was found to have attempted to coerce the plaintiff into settling his claim. Id. The facts of McDonald have been described by the Alabama Supreme Court as "the minimum threshold that a defendant must cross in order to commit outrageous conduct." ITT Specialty Risk Services v. Barr, 842 So.2d 638, 644 (Ala.2002), quoting Gibbs v. Aetna Cas. & Sur. Co., 604 So.2d 414 (Ala.1992). See also, Wiggins v. Risk Enterprise Management Limited, supra. at 1283 (M.D.Ala.1998),

22

(recognizing that the McDonald court set "the minimum threshold that a defendant's conduct must cross in order for the defendant to be liable for outrageous conduct" and summarizing McDonald as follows: "Thus, it appeared in McDonald that the company not only contested payments with no lawful reason, but also contested payments in a manner intended to cause pain and suffering to the insured in order to coerce him into settlement.")

Similarly, Travelers Indemnity Company. of Illinois v. Griner, 809 So.2d 808 (Ala.2001), the plaintiff's evidence established that the insurer had a legal obligation to pay for a hospital bed, a whirlpool bath, and psychiatric treatment for the plaintiff. Id. at 811. The evidence established that these items should have been but were not provided for a period of approximately five years. Id., [emphasis added]. Most critically, the court found that even though the insurer acknowledged that it was contractually obligated to provide the prescribed items to the plaintiff, the defendant-insurer withheld the items anyway, hoping that by doing so it would cause the plaintiff pain and frustration so that he would agree to a minimal settlement. Id. at 812.

It is apparent by the lone examples of McDonald and Griner that the Alabama Supreme Court has found outrage to exist only in the most extreme of cases arising in the employer-employee context. The majority of reported outrage cases deal with the affirmation of summary judgment or other adjudication of the outrage claim in favor of the defendant employer. See, e.g., House v. Corporate Services, Inc., 882 F.Supp.

161 (M.D.Ala.1995), (no outrageous conduct found where plaintiff merely asserted general allegations of delay, refusal to pay benefits, and refusal to approve treatment); Gibson v. Southern Guaranty Ins. Co., 623 So.2d 1065 (Ala.1993), (summary judgment in favor of the defendant affirmed where the plaintiff did not receive a neuro-psychological evaluation for nine months due to misunderstanding, delay, and breakdowns in communication with defendant-insurance carrier); Farley v. CNA Ins. Co., 576 So.2d 158 (Ala.1991), (outrageous conduct found not to exist, despite evidence that defendant's adjuster was unsympathetic, bills were not timely paid, and plaintiff "was given the runaround"); Wooley v. Shewbart, 569 So.2d 712 (Ala.1990) (trial court's denial of defendant's summary judgment motion reversed and rendered in favor of the defendant because outrage found not to exist where the claim of improper conduct was that defendant denied the plaintiff's surgical request for no reason).

Both McDonald and Griner feature factual circumstances that are easily distinguishable from plaintiff Brown's case. In fact, the circumstances present in this case are even more benign, reasonable, and acceptable than those in the cases cited above where the Supreme Court found that no outrage existed. Even assuming all of plaintiff Brown's allegations were true, which the defendant denies, it is important to note that the defendant workers' compensation insurance carriers in both McDonald and Griner were found to have committed outrageous conduct on a continuing basis for a period of five years for the purpose of inducing the plaintiff-employees into settling

their claims for amounts far below the reasonable values for said claims.  McDonald, supra. at 1211-1216; Griner, supra. at 811-812.

There is no allegation and no proof offered by the plaintiff Brown, however, that the defendant Claims Management in any way attempted to coerce him into settling his claim.  In this case, there is no evidence of failure to pay benefits, no evidence of failure to pay for medical treatment, and no evidence of any attempt to settle the plaintiff's claim.   In fact, the plaintiff's allegation that the defendant Claims Management denied a surgical request is absolutely unfounded.  (Miller Dep., pp. 33-34, In. 17-5).  To the contrary, the evidence shows that plaintiff Brown's surgery was approved within 24 hours of receipt by the defendant Claims Management of his surgery request paperwork.  (Miller Dep., pp. 30-32, In. 10-11; Def. ex. 1; Def. ex. 2).   Furthermore, while the plaintiffs in McDonald and Griner were forced into ongoing battles with their insurance carriers for a period of approximately five years, the evidence in plaintiff Brown's case clearly shows that his shoulder surgery was performed approximately two months from the date of his initial injury.  During this time period, the defendant Claims Management arranged for and paid for multiple physician's appointments for the plaintiff, including an MRI and an appointment with an orthopaedic physician.  (Heppes Dep., pp. 215-216, Pl. ex. 4; p. 220, Pl. ex. 7; p. 221, Pl. ex. 8).  The defendant Claims Management placed the plaintiff on light duty, as requested by his doctor, and paid for all medical treatments and other applicable

workers' compensation benefits to which the plaintiff was lawfully entitled  (Brown Dep., pp. 65-67, ln. 6-17; pp. 95-96, ln. 12-9; p. 152, ln. 2-10).  The defendant Claims Management  further approved the plaintiff's surgery within one day of receiving the plaintiff's surgery request form from his physician, and paid for said surgery.  (Miller Dep., p. 25, ln. 5-25,; pp. 31-32, ln. 3-11; Def. ex. 1).  Even if there was a period of delay in scheduling the plaintiff Brown's surgery (and the defendant CMI contends there was no such delay), the evidence demonstrates that such delay was nothing more than "ordinary delays, misunderstandings, and breakdowns in communication."  Gibson v. Southern Guaranty Insurance Co., 623 So.2d 1065, 1067 (Ala.1993), citing Garvin v. Shewbart, 564 So.2d 428, 431 (Ala.1990).  The plaintiff has even agreed that any delay was due to miscommunication.  (Brown Dep., p. 159, ln. 17-23).  There is absolutely no evidence that the defendant Claims Management intended to deny him medical treatment or to cause him any difficulty.

Plaintiff Brown's case is more aligned factually with those cases in which the Alabama Supreme Court has found that outrageous conduct did not exist.  In Soti v. Lowes Homes Centers, Inc., 906 So.2d 916 (Ala.2005),  the Alabama Supreme Court affirmed the trial court's entry of summary judgment for the defendants (employer, Lowes, and employer's workers compensation administrator, SRS), where the plaintiff-employee alleged outrageous conduct due to the defendants' failure to approve a surgical procedure.  The evidence showed that the administrator's adjuster believed the

26

plaintiff's injury was non-work related and thus was not compensable. Id. at 920-921. The court noted that Soti's case was distinguishable from McDonald and Griner because the administrator did not engage in a longstanding practice of denying the plaintiff's benefits. Id. at 921. Additionally, the evidence showed that the plaintiff's doctor delayed sending a referral request by three-weeks and did not indicate in that request that the plaintiff was in pain and in need of immediate treatment. Id at 921. The court stated, "Although Soti's brief gives a thorough description of the pain he endured, as related by his physician, and the complications that could have resulted had the hernia not been repaired, there is no evidence indicating that SRS knew during the six-week period … that Soti was in pain or that his condition was serious. Moreover, there is no evidence indicating that SRS was attempting to use Soti's condition to pressure Soti to agree to a more favorable settlement." Id.

In the case at bar, the evidence shows that the defendant Claims Management's adjuster, Ms. Heppes-Greenspan believed the plaintiff's injury to be compensable and had in fact approved multiple physicians appointments and an MRI. (Heppes Dep., pp. 215-216, Pl. ex. 4; p. 220, Pl. ex. 7; p. 221, Pl. ex. 8). However, Ms. Heppes-Greenspan was not in possession of sufficient information to make a determination as to the approval or denial of the plaintiff's surgery until the surgery request paperwork was received from Dr. Howorth's office on November 15, 2004. (Miller Dep., pp. 30-31, ln. 10-2; Def. ex. 2). As was the case in Soti, it appears that Dr. Howorth

completed the surgery request form on October 30, 2004, but the paperwork was not received by Ms. Heppes-Greenspan at the defendant Claims Management until November 15, 2004. (Miller Dep., pp. 30-31, ln. 10-2; Def. ex. 2). Furthermore, the doctor gave little indication in his paperwork that the surgery must be expedited. (Miller Dep., Def. ex. 2). Nevertheless, the defendant Claims Management notified Dr. Howorth's office the next day, November 16, 2004, that the plaintiff's surgery was approved. (Miller Dep., p. 25, ln. 5-25,; pp. 31-32, ln. 3-11; Def. ex. 1).

It was then the responsibility of the doctor's clinic assistant, Amy Miller, to schedule the plaintiff's surgery, which she arranged for November 29, 2004, the first available appointment. (Miller Dep., p. 34, ln. 10-22; p. 46, ln. 11-13). Ms. Miller testified that a waiting period of thirteen days was reasonable and not out of the ordinary. (Miller Dep., pp. 36-37, ln. 25-16). Clearly, the defendant Claims Management did not engage in a longstanding practice of denying the plaintiff's benefits nor did the defendant use the plaintiff's condition to pressure the plaintiff into settlement of his claim. There is absolutely no evidence that settlement of the plaintiff's claim was ever discussed. The plaintiff's claim bears no factual relationship to the high standard set by McDonald and Griner, but is factually similar to Soti, House, Gibson, Farley, Wooley, and the other multiple outrage cases which the Alabama Supreme Court has struck down. Therefore, summary judgment is proper and due to be granted as to the Outrageous Conduct count alleged in the plaintiff's

28

complaint.

IV.   The Plaintiff's Claim For Suppression Of Material Facts Fails As A Matter Of Law To State A Claim For Which Relief Can Be Granted.

In Count Three of his complaint, the plaintiff attempts a claim for Suppression of Material Facts.   The plaintiff states that a confidential relationship existed between the plaintiff and the defendant Claims Management by virtue of the fact that the defendant Claims Management was the only party receiving medical reports concerning the plaintiff and was in control of the plaintiff's medical care and treatment. (Complaint; Count Three, ¶ 2-3).   The plaintiff alleges that the defendant Claims Management violated its duty to disclose to the plaintiff truthful information with respect to his medical condition in that the defendant was aware that Dr. Howorth recommended that the plaintiff undergo shoulder surgery "immediately," yet defendant failed to have the plaintiff's treatment reviewed by an independent medial examiner and otherwise had no evidence or medical basis for denying the plaintiff's surgery. (Complaint; Count Three, ¶ 2-4).   The plaintiff further states that "had he known the truth and had misrepresentations not been made to him by the Defendant he would have sought other care and treatment immediately but he was relying upon the representations of the Defendant."   (Complaint; Count Three, ¶ 5).   As a proximate consequence of the alleged suppression of material facts, the Plaintiff states that he was injured in that he did not have surgery  in a timely fashion, he suffered permanent

injury and disability, and he experienced emotional distress, anxiety, and physical pain and suffering. (Complaint; Count Three, ¶ 6).

As is the case with claims of intentional fraud or outrageous conduct, in order to go to a jury, a plaintiff must present evidence of suppression that, if accepted and believed by the jury, would qualify as clear and convincing proof of fraud. Soti v. Lowe's Home Centers, Inc., supra. at 923. The elements that the plaintiff must prove to this standard include: (1) that the defendant had a duty to disclose the existing material fact; (2) that the defendant suppressed that material fact; (3) that the suppression induced the plaintiff to act or to refrain from acting; and (4) that the plaintiff suffered actual damage as a proximate result. Id. at 923. See also, Upton v. Drummond Company, Inc., 762 So.2d 373, 378 (Ala.Civ.App.2000), citing State Farm Fire & Cas. Co. v. Owen, 729 So.2d 834, 837 (Ala.1998).

A.    No information was withheld from the plaintiff.

The evidence clearly shows that the defendant Claims Management did not suppress material facts in any manner. As stated previously, the plaintiff was first examined by Dr. Howorth on October 27, 2004. (Heppes Dep., p. 229, Pl. ex. 12). Ms. Victoria Heppes-Greenspan, as agent for the defendant Claims Management, faxed a surgery request form to Dr. Howorth's office on that same date. (Miller Dep., pp. 26-27, ln. 1-4; Def. ex. 2). Dr. Howorth completed, signed, and dated the form on October 30, 2004, (Miller Dep., pp. 28-30, ln. 22-9; Def. ex. 2), and returned it to

30

Claims Management on November 15, 2004.  (Miller Dep., pp. 30-31, ln. 10-2; Def.

ex. 2).   Consequently, Claims Management could not have possibly suppressed any

material fact regarding approval or denial of the plaintiff's surgery until that date, as

the surgery had not been requested until that date.  Victoria Heppes-Greenspan called

Amy Miller at Dr. Howorth's office on the following day, November 16, 2004, and

alerted Ms. Miller that plaintiff-Brown's surgery had been approved.  (Miller Dep., p.

25, ln. 5-25; pp. 31-32, ln. 3-11; Def. ex. 1).  Ms. Miller further testified that she did

not schedule the plaintiff's surgery prior to its approval on November 16, 2004.

(Miller Dep., pp. 33-34, ln. 17-5; p. 43, 11-24; Def. ex. 3).   As such, there is no

evidence to show that the plaintiff's surgery was ever cancelled or denied by the

defendant Claims Management.  There simply was no suppression.

In Davant v. United Land Corporation, 896 So.2d 475, 490 (Ala.2004), the

Alabama Supreme Court stated:

> "Where the record indicates that the information alleged to have been
> suppressed was in fact disclosed, and there are no special circumstances
> affecting the plaintiff's capacity to comprehend, the plaintiff cannot
> recover for suppression."  Ex parte Alfa Mut. Fire Ins. Co., 742 So.2d
> 1237, 1243 (Ala.1999).  "In other words, plain disclosure to a person
> competent in intelligence and background to understand the disclosure is
> the legal antithesis of suppression, by definition."  Allstate Ins. Co. v.
> Ware, 824 So.2d 739, 746 (Ala.2002).

Davant v. United Land Corp., 896 So.2d at 490.

In the case at bar, any information allegedly suppressed was actually fully disclosed to

the plaintiff and the plaintiff has acknowledged this.  For example, although the defendant Claims Management denies that it "canceled" the plaintiff's surgery, it is abundantly clear that the plaintiff was not operating under the misapprehension that his surgery had been scheduled when it actually had not, as the plaintiff has clearly stated that he was aware from the date of his initial appointment with Dr. Howorth that his surgery had not been approved by the defendant Claims Management.  (Brown Dep., p. 70, ln. 3-23; p. 78, ln. 11-22; pp. 143-146, ln. 23-5).  Mr. Brown also has acknowledged that he was told that the surgery could not be scheduled until the necessary paperwork was received from the doctor.  (Brown Dep., pp. 90-91, ln. 22-12; pp. 159-163, ln. 17-3).  Once said paperwork was received from the doctor, the surgery was promptly approved.  (Miller Dep., p. 25, ln. 5-25; pp. 31-32, ln. 3-11; Def. ex. 1).

B.    There is no evidence that the defendant acted intentionally to withhold information from the plaintiff.

The plaintiff cannot show, by clear and convincing evidence, that he suffered actual damage as a proximate result of the alleged suppression.  In Soti v. Lowe's Home Centers, Inc., supra., the employee-plaintiff alleged suppression against her employer, Lowe's, and the company that handled the employer's workers' compensation benefits, SRS.  The plaintiff, out of work since 2000 due to a work-related injury, was not approved for hernia surgery by the adjuster handling his

32

workers' compensation case due to the adjuster's belief that the hernia arose separately from the plaintiff's original work-related injury. The Supreme Court affirmed the trial court's order of summary judgment for the defendants, stating, "In this case, SRS did not deny a referral because of some formalistic violation of a secret, unwritten policy…. Instead, SRS clearly denied the referral because of confusion related to whether and how the hernia was connected to Soti's compensable injury." Id. at 924. In the plaintiff Brown's case, it is clear that the defendant Claims Management never denied the plaintiff's request for surgery. In fact, as stated previously, the surgery was approved within 24-hours of receiving the required surgery request forms from Dr. Howorth's office. (Miller Dep., p. 25, ln. 5-25; pp. 31-32, ln. 3-11; Def. ex. 1). Nevertheless, if some delay were found to have occurred, said delay would clearly be the result of the delay in receiving the plaintiff's surgery request paperwork from the office of Dr. Howorth, followed by the failure by Dr. Howorth's office to expedite the plaintiff's surgery, rather than any intentional effort to suppress material facts from the plaintiff. As such, summary judgment is due to be granted on the third count of the plaintiff's complaint, alleging suppression of material facts because there is no evidence that the defendant Claims Management acted intentionally to withhold or suppress information from the plaintiff, and, in fact, no information was withheld.

V.    The Plaintiff's Claim For Negligence Is Barred By The Exclusivity Provisions Of The Workers' Compensation Act.

On December 28, 2005, the plaintiff amended his complaint to include a fourth count alleging negligence against the defendant Claims Management. (Amended Complaint; Doc. 11). In the body of Count Four, the plaintiff alleges that the defendant Claims Management breached its duty "to timely process [plaintiff's] request for approval of the surgery and to timely provide medical care." (Amended Complaint; Doc. 11, ¶ 2). The plaintiff further states that as a consequence of the alleged breach of duty, the plaintiff surgery was not timely performed and his rehabilitation was delayed, thereby causing a painful and difficult recovery, as well as permanent disability and severe emotional distress. (Amended Complaint; Doc. 11, ¶ 4). However, it is not necessary to address whether the defendant Claims Management breached any duty, nor is it necessary to address the nature and extent of the plaintiff's alleged damages. The plaintiff's allegations of negligence are absolutely barred by the exclusivity provisions of the Alabama Workers' Compensation Act. Section 25-5-11(a) of the Act provides, in pertinent part, as follows:

> If a party, other than the employer, is a workers' compensation carrier of the employer or any person, firm, association, trust, fund, or corporation responsible for servicing and payment of workers' compensation claims for the employer, or any officer, director, agent, or employee of the carrier, person, firm, association, trust fund, or corporation, or is a labor union, or any official representative therof, or is a governmental agency providing occupational safety and health services, or an employee of the agency, or is an officer, director, agent, or employee of the same employer, or his or her personal representative, the injured employee, or his or her decedents in the case of death, may bring an action against any workers' compensation insurance carrier of the employer or any person,

firm, association, trust, fund, or corporation responsible for servicing and payment of workers' compensation claims for the employer, labor union, or the governmental agency, or person, or his or her personal representative, only for willful conduct which results in or proximately causes the injury or death.

Alabama Code (1975), § 25-5-11.

In short, an injured employee, such as the plaintiff Brown, may bring an action against the workers' compensation servicer of his employer, such as the defendant Claims Management, only for willful conduct which results in or proximately causes his injury. Id. The plaintiff has failed to plead or prove any such willful conduct. In Gibson v. Southern Guaranty Insurance Company, 623 So.2d 1065 (Ala.1993), the Supreme Court of Alabama held that the plaintiff's claims alleging negligence and wantonness against the medical case coordinator assigned to his file by his employer's workers' compensation carrier's contractor were barred by Section 25-5-11. More recently, the United States District Court for the Southern District of Alabama reaffirmed this principle under very similar factual circumstances. Raye v. Employer's Insurance of Wausau, 345 F.Supp.2d 1313, 1318 (S.D.Ala.2004). In Raye, the Court ruled that the plaintiff's allegations of negligence failed to state a claim against the employee assigned to the plaintiff's file by the plaintiff's employer's workers' compensation carrier's contractor. Furthermore, the Supreme Court of Alabama has "consistently refused to recognize a cause of action for the negligent handling of insurance claims, and it will not recognize a cause of action for wanton handling of

35

insurance claims." Kervin v. Southern Guaranty Insurance Company, 667 So.2d 704, 706 (Ala.1995), citing Pate v. Rollison Logging Equipment, Inc., 628 So.2d 337 (Ala.1993); Armstrong v. Life Insurance Co. of Virginia, 454 So.2d 1377, 1380 (Ala.1984), overruled on other grounds, Hickox v. Stover, 551 So.2d 259, 264 (Ala. 1989); Chavers v. National Security Fire & Casualty Co., 405 So.2d 1 (Ala.1981); Calvert Fire Ins. Co. v. Green, 180 So.2d 269 (Ala.1965)).   Therefore, it is clear that Count Four of the plaintiff's complaint, alleging negligence against the defendant Claims Management, is due to dismissed because it is preempted by §25-5-11 of the Workers' Compensation Act.

VI.  Conclusion

As has been thoroughly established herein, the plaintiff has failed to present sufficient evidence which allows the claims pleaded in his complaint to survive summary judgment.

The defendant Claims Management has made no false representations and has not suppressed any information about any aspect of the plaintiff's medical treatment. In fact, the truth of the matter is that the defendant Claims Management has acted with the utmost good faith towards the plaintiff.  All requests for treatment, including but not limited to the October MRI and the November surgery, were responded to promptly and there has been absolutely no withholding of any medical treatment.  The defendant Claims Management never cancelled any surgery, the defendant Claims

36

Management never told the plaintiff that no surgery would be allowed until additional medical doctors recommended same, and the defendant Claims Management never attempted to dissuade the plaintiff from seeking treatment. The plaintiff must do more than simply allege that there is a metaphysical doubt as to the material facts in order to state a claim.

Likewise the record in this case is absolutely void of any evidence which supports the plaintiff's outrage claims. The only "delay" in receiving surgery the plaintiff can point to is the allegation that the defendant Claims Management canceled surgery that was (according to the plaintiff's mistaken recollection) allegedly scheduled for the first Monday following October 27, 2004. This is absolutely incorrect. First, the surgery was not scheduled for that date. As such, it could not have been cancelled. Therefore, the only "delay" that might have actually occurred would be the time it took for the defendant Claims Management to get the surgical request back from the doctor so surgery could be approved. The plain facts of this case mandate but one conclusion: the passage of nineteen days (the number of days between the October 27 visit and the November 15 sending of the request) does not rise to the level needed to support a claim for outrage.

Finally, the negligence claim is clearly barred by the exclusivity provisions of the Workers' Compensation Act.

Accordingly, summary judgment is proper on all counts and is due to be granted

37

in favor of the defendant Claims Management.

This 21st day of August, 2006.

Respectfully submitted,

CARLOCK, COPELAND, SEMLER
& STAIR, LLP

BY:____/s/ Jeffrey A. Brown_____
Jeffrey A. Brown
Attorney Code: BRO132

___/s/ Archie I. Grubb, II_____
Archie I. Grubb, II
Attorney Code:  GRU015
Attorneys for Defendant, Claims Management
Post Office Box 139
Columbus, Georgia 31902-0139
(706) 653-6109

CERTIFICATE OF SERVICE

I, Jeffrey A. Brown, do hereby certify that I am of counsel for defendant Claims Management, Inc. and that I have served a copy of the above and foregoing DEFENDANT CLAIMS MANAGEMENT, INC.'S MOTION FOR SUMMARY JUDGMENT AND BRIEF upon all counsel of record via electronic filing and by depositing a true copy of same in the United States mail, postage prepaid, in an envelope addressed to opposing counsel as follows:

John A. Tinney, Esquire
Post Office Box 1430
Roanoke, Alabama  36274

This 21st day of August, 2006.

___/s/ Jeffrey A. Brown_____
Of Counsel for Defendant, Claims Management, Inc.

39

2013457v.1