IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

2006 SEP 21 P 4: 22

| | | |
|---|---|---|
| EMERY STEVE BROWN | ) | |
| PLAINTIFF | ) | |
| VS. | ) | CASE NO. 3:05-CV-0681-MHT-CSC |
| CLAIMS MANAGEMENT, INC. | ) | |
| DEFENDANT | ) | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Comes now Plaintiff and in opposition to Defendant's Motion for Summary Judgment would state that Defendant is not entitled to Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as there are genuine issues of material facts for resolution by a jury. Plaintiff would further state that the Defendant is not entitled to judgment as a matter of law.

This Motion in Opposition is based on the pleadings, responses to discovery, the deposition of Plaintiff Emery Steve Brown, the affidavit of Plaintiff Emery Steve Brown, the deposition of Victoria Heppes, the deposition of Amy C. Miller, and the following Brief in Opposition to Defendant's Motion for Summary Judgment.

## PLAINTIFF'S NARRATIVE STATEMENT OF
## UNDISPUTED FACTS

On September 28, 2004, Emery Steve Brown was employed by Wal-Mart Stores East, LP. (Complaint, Statement of Facts, Paragraph 3, Exhibit 7 to Evidentiary Submission.)  On that date the Plaintiff injured his right shoulder while unloading a produce truck at the Wal-Mart Store located in Roanoke, Alabama.  (Dep. of Brown, Page 43, Lines 10-23, Exhibit 4 to Evidentiary Submission.)  Plaintiff first received treatment for his right shoulder in the emergency room of Randolph Medical Center on September 28, 2004, where he was given pain medication and x-rays were taken.  (Dep. of Brown, Page 50, Lines 5 and 6, Exhibit 4 to Evidentiary Submission.)

Defendant Claims Management, Inc. (hereinafter CMI) is the administrator of the workmen's compensation claim for Wal-Mart Stores East, LP.  (Dep. of Heppes, Page 2, Lines 19-21, Exhibit 1 to Evidentiary Submission.)  Victoria Heppes was the claims manager employed by Defendant CMI and designated to handle the Plaintiff's claim.  (Complaint, Statement of Facts, Paragraph 12, Exhibit 7 to Evidentiary Submission.)

Plaintiff was referred to Dr. Mitchell Shirah of Roanoke Family Care in Roanoke, Alabama, on October 4, 2004, for further treatment.  (Dep. of Brown, Pages 51-53, Lines 15-17, Exhibit 4 to Evidentiary Submission.)  Plaintiff was diagnosed by Dr. Shirah with having a severe shoulder strain, was given pain

medication and advised to follow up in four days. (Dep. of Heppes, Page 215; Plaintiff's Exhibit 4 attached as Exhibit 1 to Evidentiary Submission.) Plaintiff would state that he saw Dr. Shirah several times between October 4, 2004, and was treated conservatively by Dr. Shirah through October 19, 2004. (Complaint, Statement of Facts, Paragraph 6, attached as Exhibit 7 to Evidentiary Submission.)

At the time that Plaintiff saw Dr. Shirah on October 8, 2004, Dr. Shirah noted in his records, "cannot rule out rotator cuff tear". (Dep. of Heppes, Page 215; Plaintiff's Exhibit 4 to the deposition, attached as Exhibit 1 to Evidentiary Submission.)

An MRI was ordered by Dr. Shirah on October 15, 2004. (Dep. of Heppes, Pages 78-79, Lines 15-27; Pages 119-120, Line 9; Page 216, Plaintiff's Exhibit 4, attached as Exhibit 1 to Evidentiary Submission.)

On October 19, 2004, the Plaintiff underwent an MRI in Oxford, Alabama, for examination of his right shoulder. (Dep. of Heppes, Page 221; Plaintiff's Exhibit 8, attached as Exhibit 1 to Evidentiary Submission.) The MRI revealed a tear of the anterior portion of the supraspinatus tendon, a subchondral cyst in the greater tuperosity, and a tear of the anterosuperior aspect of the labrum. (Dep. of Heppes, Page 221; Plaintiff's Exhibit 8, attached as Exhibit 1 to Evidentiary Submission.) **Dr. Shirah reviewed the results of**

**the Plaintiff's MRI and diagnosed a right rotator cuff tear**.    (Dep. of Heppes, Page 215; Plaintiff's Exhibit 4, attached as Exhibit 1 to Evidentiary Submission.)

As of October 22, 2004, Ms. Heppes was aware of the fact that the Plaintiff had a torn rotator cuff.    (Dep. of Heppes, Page 119, Lines 1-8, attached as Exhibit 1 to Evidentiary Submission.)

Ms. Heppes defined her duties to the Plaintiff as the claims manager of his file to be as follows:

(a)    If the employee needs immediate medical treatment that's what she is going to give him.  Her responsibility is to get him the quickest and best medical attention possible. (Dep. of Heppes, Page 102, Lines 7-25, attached as Exhibit 1 to Evidentiary Submission.)

(b)    Her duty when an injured worker is in pain is to see that she provides **the quickest relief possible**. (Dep. of Heppes, Page 115, Lines 9-12, attached as Exhibit 1 to Evidentiary Submission.)

(c)    Her customer service is to get the best medical attention for the person who is hurting. (Dep. of Heppes, Page 138, Lines 17-21, attached as Exhibit 1 to Evidentiary Submission.)

On October 22 the claims manager, Ms. Heppes was aware of the following information:

4

1.  She knew that the Plaintiff had a torn rotator cuff. (Dep. of Heppes, Page 119, Lines 1-8, attached as Exhibit 1 to the Evidentiary Submission.)

2.  She had received the MRI report indicating the torn rotator cuff. (Dep. of Heppes, Page 122, Lines 8-9, attached as Exhibit 1 to the Evidentiary Submission.)

3.  **She was aware that Mr. Brown needed surgery. (Dep. of Heppes, Page 121, Lines 14-16,** attached as Exhibit 1 to the Evidentiary Submission.**)**

4.  **She was aware that Mr. Brown was in immediate pain**. (Dep. of Heppes, Page 114, Lines 6-11, Page 117, Lines 15-20, attached as Exhibit 1 to the Evidentiary Submission.)

Dr. Shirah referred the Plaintiff to Dr. Holworth in Alexander City, Alabama. Dr. Holworth is an orthopedic surgeon. An appointment with Dr. Holworth was arranged for October 27, 2004. (Dep. of Heppes, Page 229; Plaintiff's Exhibit 12, attached as Exhibit 1 to the Evidentiary Submission.)

At this point in time the Plaintiff was 30 days post-injury and had been experiencing all that goes with a torn rotator cuff in this 30 day period, i.e. PAIN.

Upon physical examination of the Plaintiff and review of his x-rays and MRI films, Dr. Holworth diagnosed the Plaintiff with an "acute tear of supraspinatus, rotator cuff". (Dep. of Heppes, Page 229; Plaintiff's Exhibit 12, attached as Exhibit 1 to the Evidentiary Submission.) Dr. Holworth indicated in his records that his plan for care and treatment of Mr. Brown was as follows:

> Recommend **immediate arthroscopic and rotator cuff repair**. He is four weeks post-injury, and it is much better to proceed with rotator cuff reconstruction within the first six weeks during the acute phase as the results are more predictable. After six weeks the results become more unpredictable. He has had severe pain, inability to sleep, and inability to use his arm since his injury. I do not feel that this will improve with PT (physical therapy) or any other modalities at this time. Without rotator cuff reconstruction, he will have permanent weakness secondary to the loss of the supraspinatus function. The rotator cuff muscle will retract, become scarred, and be impossible to repair easily. (Dep. of Heppes, Plaintiff's Exhibit 11, attached to the Evidentiary Submission as Exhibit 1.)

This record from Dr. Holworth's office shows that a copy of this was sent to Dr. Shirah and **Wal-Mart**. (Dep. of Heppes, Plaintiff's Exhibit 11, attached as Exhibit 1 to Evidentiary Submission.)

The claims manager in charge of Mr. Brown's care at CMI, Ms. Heppes, admitted that she knew that Dr. Holworth was recommending **IMMEDIATE** arthroscopic surgery and rotator cuff repair. (Dep. of Heppes, Page 141, Lines 8-13, attached as Exhibit 1 to the Evidentiary Submission.)

**Ms. Heppes knew of the above contents of Dr. Holworth's October 27, 2004, letter (Exhibit 1 to Evidentiary Submission) on October 27, 2004. (Dep. of Heppes, Page 136, Lines 12-16,** attached as Exhibit 1 to the Evidentiary Submission.) This information came from the doctor selected by Wal-Mart to treat Mr. Brown and was not information coming from a

6

physician selected by Mr. Brown. (Dep. of Heppes, Page 136, Lines 17-25, attached as Exhibit 1 to the Evidentiary Submission.)

At that point in time Ms. Heppes was also aware that all rotator cuff injuries that she had previously dealt with in her career as a Wal-Mart claims adjuster had to be surgically repaired. (Dep. of Heppes, Page 25, Lines 19-24, attached as Exhibit 1 to the Evidentiary Submission.) She had never known of a rotator cuff injury which had healed itself. (Dep. of Heppes, Page 25, Lines 2-5, attached as Exhibit 1 to the Evidentiary Submission.)

After Dr. Holworth's examination on October 27, 2004, Dr. Holworth scheduled Mr. Brown for surgery on October 27. (Dep. of Miller, Page 44, Lines 18-22, attached as Exhibit 3 to Evidentiary Submission; Affidavit of Brown, Exhibit 2 to the Evidentiary Submission; and Dep. of Brown, Page 70, Lines 11-14, attached as Exhibit 4 to the Evidentiary Submission.) October 27, 2004, was a Wednesday. Dr. Holworth told him he wanted to do surgery on the following Monday. (Dep. of Brown, Page 68, Lines 21-23, attached as Exhibit 4 to the Evidentiary Submission.) Dr. Holworth told Mr. Brown to go to the hospital and get pre-opped and ready to go in. (Dep. of Brown, Page 70, Lines 11-14, attached as Exhibit 4 to the Evidentiary Submission.)

Dr. Holworth had advised Mr. Brown that physical therapy would not do him any good until his shoulder was fixed. (Dep. of Brown, Page 69, Lines 2-3, attached as Exhibit 4 to the Evidentiary Submission.)

When Mr. Brown returned home from his October 27 visit with Dr. Holworth thinking he was going to have surgery the following Monday, he received a telephone call from Ms. Heppes advising him that surgery was being denied. (Dep. of Brown, Page 69, Lines 3-5, Exhibit 4 to Evidentiary Submission; Dep. of Heppes, Page 205-06, Lines 25-3, Exhibit 1 to Evidentiary Submission.) She stated to Mr. Brown that they wanted two more doctors' opinions before they would approve surgery. (Dep. of Brown, Page 69, Lines 3-5, attached as Exhibit 4 to the Evidentiary Submission.) Ms. Heppes knew that Mr. Brown was in pain. (Dep. of Heppes, Page 114, Lines 6-8, attached as Exhibit 1 to the Evidentiary Submission.) She stated, "12 hours was a long time to wait if you are in pain. Seventy-two hours is a long time if you are in pain." (Dep. of Heppes, Page 139, Lines 9-15, attached as Exhibit 1 to the Evidentiary Submission.)

Ms. Heppes admits that she did cancel the surgery. (Dep. of Heppes, Page 205, Lines 9-13, attached as Exhibit 1 to the Evidentiary Submission.)

Ms. Heppes faxed a Surgery Request Form to Dr. Holworth's office on October 27, 2004. (Dep. of Miller, Pages 26-27, Lines 1-4; Defendant's

Exhibit 2, attached as Exhibit 3 to the Evidentiary Submission.)   Dr. Holworth completed and signed the Surgery Request Form and dated it October 30, 2004. (Dep. of Miller, Pages 28-30, Lines 22-9; Defendant's Exhibit 2, attached as Exhibit 3 to the Evidentiary Submission.) **Dr. Holworth's office told Mr. Brown that they sent the records back to Ms. Heppes the SAME WEEK that CMI asked for the same.** (Dep. of Brown, Page 162, Lines 16-17, attached as Exhibit 4 to the Evidentiary Submission.)

Ms. Heppes knew at that point in time that Mr. Brown had received an injury at the store and that he needed rotator cuff repair. (Dep. of Heppes, Page 160, Lines 8-10, attached as Exhibit 1 to the Evidentiary Submission.)

On October 27, 2004, Ms. Heppes had spoken with Dr. Holworth's office and they told her that Mr. Brown needed surgery. (Dep. of Heppes, Page 136, Lines 13-16, attached as Exhibit 1 to the Evidentiary Submission.)   She was told that Dr. Holworth was recommending **IMMEDIATE** arthroscopic surgery and rotor cuff repair. (Dep. of Heppes, Page 141, Lines 10-13, attached as Exhibit 1 to the Evidentiary Submission.)

She got lots of calls from Mr. Brown after that. She stated that, "He was telling me he was in pain every time he called. He was yelling sometimes." (Dep. of Heppes, Page 155, Lines 14-17, attached as Exhibit 1 to the Evidentiary Submission.) He was telling her that he wanted his surgery.

9

(Dep. of Heppes, Page 155, Lines 22-23, attached as Exhibit 1 to the Evidentiary Submission.)

In response to the continued pleas for help Mr. Brown states that Ms. Heppes made the following statements to him:

1.   She kept saying that he needed another doctor to look at it. (Dep. of Brown, Page 71, Lines 9-11, attached as Exhibit 4 to the Evidentiary Submission);

2.   Another time Ms. Heppes told him that one doctor had looked at it and she hadn't had another doctor look at it yet. (Dep. of Brown, Page 75, Lines 16-18, attached as Exhibit 4 to the Evidentiary Submission);

3.   She said that two more doctors had to look at it before the surgery could be approved.  (Dep. of Brown, Page 89, Line 13-15, attached as Exhibit 4 to the Evidentiary Submission.;

4.   At one point she stated to Mr. Brown that the "in house" physician of CMI had stated that the surgery on the Plaintiff was not medically necessary and that there were alternative forms of treatment available.   (See Affidavit of Emery Steve Brown, attached to the Evidentiary Submission filed herewith as Exhibit 2.)

Ms. Heppes admits making the following statements to Mr. Brown:

1.   She may have told Mr. Brown that his case had to be reviewed by a doctor before she could get approval for surgery. (Dep. of Heppes, Page 198, Lines 19-22, attached as Exhibit 1 to the Evidentiary Submission.)

2.   She told Mr. Brown that she had to get a company called CorVel to do the pre-certification before surgery could be ordered.  She told this to him every time he called probably.

(Dep. of Heppes, Page 181, Lines 23-25, Page 182, Lines 1-2, attached as Exhibit 1 to the Evidentiary Submission.)

3.    She told Mr. Brown that his medical records had to be reviewed before he could be approved for surgery. (Dep. of Heppes, Page 156, Line 25 and Page 157, Lines 1 and 2, attached as Exhibit 1 to the Evidentiary Submission.)

Ms. Heppes knew that there was nothing in the records which indicated rotator cuff surgery was not medically necessary and she knew that Mr. Brown had a legitimate injury from his employment at the store. (Dep. of Heppes, Page 199, Lines 10-16, attached as Exhibit 1 to the Evidentiary Submission.)

At any point in time if Ms. Heppes felt surgery was needed she could go to her boss to get instructions as to what to do. (Dep. of Heppes, Page 76, Lines 10-11, attached as Exhibit 1 to the Evidentiary Submission.)

CMI claims that they did not receive the Surgery Request Form sent to Dr. Holworth on October 27, 2004, which was signed by Dr. Holworth on October 30, until November 15, 2004. (Dep. of Heppes, Page 144, Lines 19-21, attached as Exhibit 1 to the Evidentiary Submission.)

Ms. Heppes stated that she felt it was her responsibility to Mr. Brown to see that the Surgery Request Form came back in a timely fashion. (Dep. of Heppes, Page 145, Lines 15-18, attached as Exhibit 1 to the Evidentiary Submission.) Twenty more days passed between October 27 and November

11

15 with Mr. Brown continuing to be in pain and getting no relief or help from anyone.

Each time Mr. Brown would call Ms. Heppes begging for help he would be told that they needed more information. She was telling him that they needed two more doctors to look at it. His response was that he thought Dr. Holworth and Dr. Shirah were good enough. (Dep. of Brown, Page 89, Lines 13-16, attached as Exhibit 4 to the Evidentiary Submission.) When Ms. Heppes told him she was not getting the records Mr. Brown called Dr. Holworth's office and was told that Dr. Holworth's office had that day sent everything they had. (Dep. of Brown, Page 75, Lines 10-13 and Page 76, Lines 19-22, attached as Exhibit 4 to the Evidentiary Submission.)

On November 15 Mr. Brown was 49 days or seven weeks from the time of his injury. Defendant was aware that Dr. Holworth had stated in his October 27 memo, which Ms. Heppes was aware of, that it was much better to proceed with rotator cuff reconstruction within the first six weeks during the acute phase as the results are more predictable. After six weeks the results become more unpredictable. (Dep. of Heppes, Exhibit 11, attached to the Evidentiary Submitted filed herewith as Exhibit 1.)

Once this form was returned, instead of following through and immediately scheduling the surgery Mr. Brown did not undergo surgery until

two weeks later on November 29, 2004. (Dep. of Miller, Page 40-43, Lines 20-10, attached as Exhibit 3 to the Evidentiary Submission.) On November 29 Mr. Brown was 63 days or exactly nine weeks from his injury.

On November 23, 2004, eight days after allegedly receiving the Surgery Request Form from Dr. Holworth's office Ms. Heppes went to her supervisor to seek approval for the surgery. She told her supervisor that Mr. Brown had a legitimate injury, that he was in pain, that the MRI showed that he needed a repair and that she thought the surgery needed to be authorized. The response from her supervisor was that, "If you feel that it needs to be authorized, then let's authorize it." (Dep. of Heppes, Page 161, Line 20 through Page 162, Line 15, attached as Exhibit 1 to the Evidentiary Submission.)

CMI admits that it did not have to give Mr. Brown's records to another physician for review prior to the time the surgery could be authorized. (See Request for Admissions, No. 2 and Response thereto attached to the Evidentiary Submission filed herewith, as Exhibit 5.) CMI further admitted that the adjuster could have approved the surgery with no additional physician review being necessary. (See Request for Admissions, No. 4 and response thereto attached to the Evidentiary Submission filed herewith as Exhibit 5.) CMI did not ever seek advice from another physician concerning Mr. Brown.

(See Interrogatory No. 2 to CMI and response thereto attached to the Evidentiary Submission filed herewith as Exhibit 6.)

At the time that Mr. Brown's surgery was finally done on November 29, 2005, Mr. Brown had to have pins put in his shoulder as opposed to his shoulder being repaired through laser treatment. Dr. Holworth told him that they could have "lasered" his shoulder if they had not waited so long for the surgery. Dr. Holworth stated that putting pins in was the best that he could do. (Dep. of Brown, Page 165, Lines 16-23, and Page 166, Lines 7-14, attached as Exhibit 4 to the Evidentiary Submission.)

Mr. Brown had to undergo a second surgery recently due to the pins being out of place. This caused him additional pain and disability. (Affidavit of Brown, Exhibit 2 to Evidentiary Submission.)

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that Summary Judgment is appropriate if the pleadings, depositions, Answers to Interrogatories, and Admissions on file, together with the affidavits, if any, so that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Rudd v. General Motors Corporation, 127 F. Supp. 2d 1333, 1337 (M.D. Ala. 2001).

14

Once the moving party has set forth the basis of its Summary Judgment Motion, the non-moving party must set forth the facts showing a genuine issue for trial. Id. at 1338. In reviewing the evidence, the Court **is not to weigh the evidence but is to determine whether there is a genuine issue of material fact.** Id. **The Court must view all evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in favor of the non-moving party.** Id.

Judge DeMent clearly stated in the recent case of Lemuel v. Admiral Insurance Company (M.D. Ala. 2006), Civil Action No. 2:03CV1101- D Opinion issued January 23, 2006, the proper standard for review on Summary Judgment. This Court stated in Lemuel:

> A court considering a Motion for Summary Judgment must construe the evidence and make factual inferences in the light most favorable to the nonmoving party. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Summary judgment is entered only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56 (c). At this juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)

Judge Albritton further correctly defined the burden of proof in Summary Judgment cases in the case of State Farm Fire and Casualty

15

Company v. Burkhardt (M.D. Ala. 2000), 96 F. Supp. 2d. 1343 where he

stated:

> The party asking for summary judgment "always bears the initial
> responsibility of informing the District Court of the basis for its
> motion, and identifying those portions of the 'pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any, which it believes demonstrate
> the absence of a genuine issue of material fact." Id. at 323. The
> movant can meet this burden by presenting evidence showing
> there is no dispute of material fact, or by showing, or pointing out
> to, the District Court that the nonmoving party has failed to
> present evidence in support of some element of its case on which
> it bears the ultimate burden of proof. Id. at 322-324.

## ARGUMENT

The Plaintiff herein has filed a four-count Complaint against Defendant

alleging the following Causes of Action:

Count One - Complaint for Fraud based upon Ala. Code §§ 6-5-101, 6-

5-103, and 6-5-104 (See Complaint, Exhibit 7, and Amended Complaint,

Exhibit 8, attached to the Evidentiary Submission);

Count Two - Complaint for Outrageous Conduct (See Complaint,

Exhibit 7, and Amended Complaint, Exhibit 8, attached to the Evidentiary

Submission);

Count Three - Complaint for Suppression of Material Facts based upon

Ala. Code § 6-5-102 (See Complaint, Exhibit 7, and Amended Complaint,

Exhibit 8, attached to the Evidentiary Submission ); and

Count Four - Complaint for Negligence. (See Complaint, Exhibit 7, and Amended Complaint, Exhibit 8, attached to the Evidentiary Submission.)

The Defendant herein has chosen to address each count separately in its argument so Plaintiff will also address each count separately:

## COUNT ONE

## COMPLAINT FOR FRAUD

The Defendant's initial argument in its Brief with respect to the Plaintiff's claim of fraud deals with the efforts of the Defendant to change Plaintiff's fraud claim into a "bad faith" claim which would be barred by the exclusivity provisions of the Workers' Compensation Act.

As pointed out by the Defendant the exclusivity provision does not necessarily shield the employer from the entire field of tort law. The Alabama Supreme Court carved out an exception allowing causes of action against employers based upon intentional tortuous conduct such as fraud. Lowman v. Piedmont Executive Shirt Manufacturing Company, 547 So.2d 90 (Ala. 1989). Plaintiff has not attempted to allege a cause of action for "bad faith" but rather has specifically stated that this cause of action is based upon an intentional fraud perpetrated by CMI upon the Plaintiff. Defendant in this case tries to analyze this case to the case of Hobbs v. Alabama Power Company, 775 So.2d 783 (Ala. 2000) wherein a plaintiff-employee filed a fraud claim against her

17

employer based on the employer's requirement that the employee file her claim for surgery against her personal health insurance company. Alabama Power claimed that her injury was based on a pre-existing condition and was not work-related. Plaintiff in that case alleged that her treatment was delayed due to the allegedly false and fraudulent representation of her employer that her injuries were not covered by workmen's compensation and should be covered by her personal health insurance because of the pre-existing condition from which she suffered.

While it is true that the Trial Court granted the Defendant's Motion for Summary Judgment this case is entirely distinguishable from the Hobbs case. In Hobbs the question was whether there was a compensable injury at all. Alleged misrepresentation was that Plaintiff's employee was told that the claim for surgery was being denied because it should be payable by her personal health insurance as opposed to workmen's compensation. The issue in that case was clearly whether or not a person was entitled to workmen's compensation at all.

In this case, it is not disputed that Plaintiff had a legitimate workmen's compensation claim. Ms. Heppes stated in her deposition at Page 162, Lines 10-11, Exhibit 1 to Evidentiary Submission:

He has a legitimate injury at the store.

18

She further stated that in talking to her team leader concerning his injury she told her team leader:

> Emery has got an injury at the store, he needs surgery, he has a rotator cuff repair... (Dep. of Heppes, Page 160, Lines 8-10, Exhibit 1 to Evidentiary Submission.)

This is not an issue as to whether a person has a compensable injury as it was it the Hobbs case. There has never been any question that Mr. Brown's claim was not compensable.

This case is more akin to the Lowman v. Piedmont Executive Shirt Manufacturing Company case, 547 So.2d 90 (Ala. 1989) wherein an employee representative of the company knowing that a plaintiff-employee had a compensable injury, tried to force an employee into not seeking medical benefits and to claim that the injury occurred off the job. In Lowman the employer perpetrating the fraud knew that the injury was compensable and tried to avoid payment of the same. The Court determined in Lowman that there was evidence of an intentional fraudulent act on the part of the employer. The Court found that the employer was guilty of conduct "beyond the bounds of the employer's proper role." See Lowman, 547 So.2d at 95.

If Plaintiff had desired to file a bad faith suit Plaintiff could certainly have done this. This is not a bad faith suit but a fraud lawsuit with respect to Count One. It is not a question about whether surgery was denied but rather it

19

is a question about a misrepresentation made by Ms. Heppes knowing that Mr. Brown had a compensable injury and that he was in dire need of medical care and attention.

Plaintiff would respectfully state that this Court's treatment of Count One should be based upon the same being a fraud claim not a "bad faith" claim as the Defendant tries to couch the same.

The representation claimed to have been made by Ms. Heppes to Mr. Brown was that she told Mr. Brown the following:

> The in-house physician of the Defendant has stated that the surgery was not medically necessary and there were alternative forms of treatment available. (Brown Affidavit, Exhibit 2 to Evidentiary Submission.)

The question for this Court to determine is whether or not there is evidence to support Plaintiff's claim that this was a false representation which Ala. Code § 6-5-101 was passed to prohibit.

In order to recover for fraud, the Plaintiff move prove: (1) A misrepresentation of a material fact; (2) made willfully to deceive, recklessly, without knowledge or mistakenly made; (3) which was justifiably relied on by the Plaintiff under the circumstances; and (4) which caused damage as a proximate consequence. The Foremost Insurance Company v. Param, 693 So.2d 409, 422 (Ala. 1997), citing Ala. Code § 6-5-101 (1975).

The evidence before the Court with respect to each of these elements necessary to state a cause of action for fraud is as follows:

<u>ELEMENT ONE</u>

MISREPRESENTATION OF A MATERIAL FACT

Plaintiff has alleged that Ms. Heppes, as Defendant's agent, represented to the Plaintiff that the in-house physician of the Defendant had stated that the surgery on the Plaintiff was not medically necessary and that there were alternative forms of treatment available to Mr. Brown.

The evidence before this Court is that this statement was made to Mr. Brown by Ms. Heppes. (See Brown Affidavit, Exhibit 2 to Evidentiary Submission.)

There is nothing in the record or before this Court denying that this statement was made by Ms. Heppes. Thus, when the evidence is viewed in the light most favorable to Mr. Brown this Court must conclude that this statement was made. Even if the Defendant files an affidavit of Ms. Heppes in response to this Brief denying the same this Court is bound by the Summary Judgment standard to believe that the statement was made to Mr. Brown.

The evidence before this Court is clear that Ms. Heppes admits that she told Mr. Brown that his records had to be reviewed by a doctor before she could get approval for surgery. (Dep. of Heppes, Page 198, Lines 19-22, and

Page 155, Line 25 through Page 156, Line 2, attached as Exhibit 1 to the Evidentiary Submission.) It was after this apparently that Ms. Heppes told Mr. Brown that the records had been reviewed and that there were alternative treatments available for him and that surgery was found to be not medically necessary by the "in-house" doctor. Assuming that Ms. Heppes made this representation to Mr. Brown the question is whether it was a <u>false</u> representation if made. To answer this, all the Court has to do is consider the following testimony of Ms. Heppes (Dep. of Heppes, Page 199, Lines 10-13, Exhibit 1 to the Evidentiary Submission):

> Q.   Do you have any records in your file at any time that you believed indicated that the rotator cuff surgery was not medically necessary?
>
> A.   <u>**NO**</u>.

The only conclusion which can be drawn is that if she said it, she was making a false representation.

The second part of the misrepresentation is that she told him there were alterative forms of treatment available. There is also credible evidence in the record to support this fact as having also been said to Mr. Brown as stated in his affidavit.

The testimony of Amy Miller is credible evidence that the alternative treatment available to which Ms. Heppes was apparently referring was physical

therapy. Amy Miller from Dr. Holworth's office testified that **CMI wanted** Mr. Brown to go through physical therapy before surgery. (Dep. of Miller, Page 24, Lines 3-6, Exhibit 3 to the Evidentiary Submission.)

Plaintiff would respectfully state that the above facts alone and in and of themselves when viewed in the light most favorable to Mr. Brown conclusively prove that there is evidence in the record to support that necessary to find Element One (a misrepresentation) was made to Mr. Brown.

Additional evidence supporting that the misrepresentation was made comes from the fact that Ms. Heppes stopped the surgery that was scheduled for the Monday after October 27.

The surgery had been scheduled on October 27 as is clear from the following testimony of Ms. Heppes in her deposition (Page 205 beginning at Line 25 through Page 206, Line 3, Exhibit 1 to the Evidentiary Submission):

> Q.    Emery said you called his house before he even got home and told someone that you had cancelled it or stopped it; is that correct?
>
> A.    Yes.

The evidence when viewed in the light most favorable to Mr. Brown is clear that there is evidence in the record to support the fact that when Ms. Heppes stated to Mr. Brown that the in-house physician of the Defendant had stated that surgery on the Plaintiff "was not medically necessary and there were

alternative forms of treatment available" this was in fact a false representation. CMI stated in its responses to Interrogatories and Admissions that there was no requirement that any in-house physician or other physician review Mr. Brown's records before surgery could be approved. (See Answer to Interrogatory No. 2, Exhibit 6, and Response to Request for Admission No. 4, Exhibit 5 to the Evidentiary Submission.)

ELEMENT TWO

The second element to state a claim for misrepresentation is that the misrepresentation was "made willfully to deceive, recklessly, without knowledge, or mistakenly made."

The evidence is clear that no additional physician review was required in this case as stated above. The evidence is further undisputed that CMI had no evidence that the surgery was not medically necessary and there was never an in-house physician review of Mr. Brown's records.

Based on the evidence before this Court there is ample evidence before the Court to support the second element required to state a cause of action for misrepresentation. If made it was either willfully made to deceive or recklessly made.

## ELEMENT THREE

The Plaintiff is required to prove to the Court that he justifiably relied on this information.

The affidavit of Mr. Brown clearly states that he did rely upon the information that was being given to him by Ms. Heppes. It is undisputed that Mr. Brown was in pain every day and suffering every day. He certainly knew that and CMI knew it. He could have gone to another physician for treatment if he had not believed what Ms. Heppes was telling him. He kept waiting on her for further guidance and was under her care.

## ELEMENT FOUR

The fourth element which is required to be proved to state a claim for fraud is that the Plaintiff must show in reliance upon the misrepresentation he was caused to suffer damage as a proximate consequence.

In Dr. Holworth's October 27 summary he stated that surgery should have been performed within four weeks of the time of the injury. After six weeks the results of the surgery are more unpredictable.

Mr. Brown testified in his deposition that Dr. Holworth told him that he could have "lasered" his rotator cuff (Dep. of Brown, Page 165, Lines 16-23, Exhibit 4 to the Evidentiary Submission) as opposed to putting pins in the same

(Dep. of Brown, Page 166, Lines 10-14, Exhibit 4 to the Evidentiary Submission).

As Mr. Brown has stated in his affidavit, the pins have shifted and Mr. Brown has had to undergo a second surgical procedure on his rotator cuff. (Affidavit of Brown, Exhibit 2 to Evidentiary Submission.)  The evidence before the Court is that Mr. Brown was told by Dr. Holworth that a second surgery would probably not have been necessary had he been able to operate on him earlier.

There is no medical evidence in this record to refute the testimony of Mr. Brown.  When viewed in the light most favorable to Mr. Brown the Court must accept that there is evidence to support the fourth element to state a cause of action for fraud.

## **PROMISSORY FRAUD ???**

The Defendant herein in its brief argued at length that the species of fraud being alleged by the Plaintiff in this case was "promissory fraud".  It premised this argument upon its apparent mistaken interpretation of the Complaint as alleging fraud consisting of a promise to perform a future act.

There was no future act alleged in Count One as to fraud in the Complaint.  The misrepresentation upon which the fraud was based was a statement as to a **present fact**, i.e. that an in-house physician had determined

that the surgery was not medically necessary and that there were alternatives to surgery.

This is not a statement as to a future fact but rather, it is a statement by the claims agent of **present fact**.  Plaintiff will not even address the argument concerning promissory fraud as promissory fraud was not alleged in the Complaint.  A reading of Count One of the Complaint plainly shows that the allegation is that there was a misrepresentation of a present material fact and did not relate to anything concerning a future fact.

If the Court accepts the allegations that this is promissory fraud then the Complaint would have stated that at some point in time after a review of the medical records an in-house physician will determine that the treatment is not medically necessary.  This is not what is stated in the Complaint and why the Defendant in this case chooses to label the allegations as to the fraud alleged in the Complaint as being promissory fraud is beyond the understanding of the Plaintiff. It is not promissory fraud that is alleged.  It is a statement of a present fact and not anything relating to the future.

## COUNT TWO

## COMPLAINT FOR OUTRAGEOUS CONDUCT

Defendant CMI in its brief correctly acknowledges that Alabama Courts have held that tort claims filed by employees alleging outrageous conduct against their employer or the employer's insurer are permissible. See Continental Casualty Insurance Company v. McDonald, 567 So.2d 1208 (Ala. 1990). Further, in Darvin v. Shewbart, 442 So.2d 80 (Ala. 1983), this Court held that the exclusivity provision of the Workers' Compensation Act, § 25-5-11, - 52, and - 53 Ala. Code (1975) **do not** bar claims based on the tort of outrage.

In Travelers Indemnity Company of Illinois v. Griner, 809 So.2d 808 (Ala. 2001), Travelers Indemnity Company of Illinois was proven to have been contractually obligated to provide medical care for Griner. Travelers had refused to pay for a hospital bed and whirlpool tub even though it knew that physicians had found the same to be reasonable and medically necessary for Griner's treatment. The Court found that withholding these items caused Griner pain. The Court concluded that:

> Thus, the evidence was sufficient for the jury to find that the conduct of Travelers and Crawford was "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as utterly intolerable in a civilized society.

(See also <u>Continental Casualty Insurance Company v. McDonald</u>, 567 So.2d at 1219.)

In this case the evidence is undisputed that Mr. Brown had a compensable injury and a torn rotator cuff. Ms. Heppes testified she knew that Dr. Holworth was recommending **IMMEDIATE** arthroscopic surgery and rotator cuff repair **ASAP**. (Dep. of Heppes, Page 141, Lines 10-13 and Exhibit 11 to Heppes deposition, Exhibit 1 to the Evidentiary Submission.) She further testified that she knew that his injury came from the store (Dep. of Heppes, Page 160, Lines 8-10, Exhibit 1 to the Evidentiary Submission) and that his claim for workmen's compensation benefits was a legitimate claim (Dep. of Heppes, Page 162, Lines 10-15, Exhibit 1 to the Evidentiary Submission).

Mr. Brown's surgery was first scheduled on October 27, 2004. (Dep. of Miller, Page 44, Lines 18-22, Exhibit 3 to the Evidentiary Submission.) Mr. Brown further testified that he was told by Dr. Holworth that the surgery would be performed on the Monday following his appointment on October 27. (Dep. of Brown, Page 70, Lines 11-14, Exhibit 4 to the Evidentiary Submission and Affidavit of Brown, Exhibit 2 to Evidentiary Submission.) Ms. Heppes herself knew that the surgery had been scheduled for that date as she called and cancelled the surgery. (Dep. of Heppes, Page 205, Line 24 and Page 206, Lines 1-3, Exhibit 1 to the Evidentiary Submission.) How can the Defendant

repeatedly argue there was no surgery scheduled in October? A person does not call and cancel something that has not already been set. Ms. Heppes admits she called Mr. Brown's home and told him it was cancelled. When this statement is viewed in the light most favorable to Mr. Brown how could this Court conclude anything other than that the surgery was scheduled the first Monday after October 27, 2004, and then cancelled by Ms. Heppes?

At the time that Ms. Heppes cancelled this surgery she knew that Mr. Brown was in immense pain and she had spoken to him on several occasions where he was in such pain that he was even yelling on the telephone. (Dep. of Heppes, Page 114, Lines 9-11 and Page 155, Lines 14-17, Exhibit 1 to the Evidentiary Submission.)

In addition, Ms. Heppes knew at this time that Dr. Holworth had stated that waiting four weeks for surgery was a problem. It was already past four weeks from the injury when she learned of this statement by Dr. Holworth. He further stated that waiting six weeks could make the results even more unpredictable. At that point in time Mr. Brown could have had the surgery and been within the six week window of opportunity for optimum results.

All Ms. Heppes had to do was to go to her supervisor as she ultimately did and secure permission for the surgery to be done. According to her, when

she finally got the approval all she did was go to her supervisor and state to her

the following:

> (Heppes' Deposition, Page 162, Lines 7 - 15, Exhibit 1 to the
> Evidentiary Submission)

> A     I talked to her about approving it because I said, if I asked
> the doctor more questions, form questions to the doctors
> and fax over a letter or anything like that, I am afraid it is
> going to take too long. It's taken too long already. He had
> a legitimate injury at the store. He's been a long-time
> associate. The mechanism of the injury, he has pain, he
> needs -- the MRI shows that he needs a repair. I think we
> need to authorize the surgery. She said, if you feel that it
> needs to be authorized, then let's authorize it.

There is no justifiable basis to have made Mr. Brown suffer irreparable

permanent injury and damage by waiting to have this surgery done when all

Ms. Heppes had to do was walk across the hall and secure the permission to get

it done on October 27 as she did on November 23.

Certainly, it cannot be argued that putting this man off for another five

weeks was reasonable under these circumstances where the man was in

excruciating pain, had a compensable injury, needed the surgery, and everyone

seemed to be turning a deaf ear to him.

Plaintiff would respectfully state that no one in a civilized society would

accept this kind of conduct and the evidence is more than substantial to submit

the question of outrageous conduct on the part of the Defendant to the jury.

## COUNT THREE

## COMPLAINT FOR SUPPRESSION OF MATERIAL FACT UNDER ALA. CODE § 6-5-102

The tort of fraudulous suppression is codified at § 6-5-102, Ala. Code (1975):

> Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case.

To support a fraudulent suppression claim under this section, a Plaintiff is required to produce substantial evidence establishing:

1.  That the Defendant had a duty to disclose the existing material facts;

2.  That the Defendant suppressed the material fact;

3.  That the Defendant's suppression of this fact induced him to act or to refrain from acting; and

4.  That he suffered actual damage as a proximate result.

See State Farm Fire and Casualty Company v. Owen, 729 So.2d 834, 837 (Ala. 1998).

In Count Three of Plaintiff's Complaint (Exhibit 11 to the Evidentiary Submission) the Plaintiff states as follows:

> 2.    Plaintiff would state that a confidential relationship existed between him and the Defendant by virtue of the special

32

circumstances that would have required the Defendant to disclose to the Plaintiff truthful information with respect to his medical condition and the responsibilities of the Defendant to the Plaintiff.

3.    Plaintiff would state that the special circumstances which existed between Plaintiff and Defendant arose from the following facts:

(a)    The Defendant herein was the only one receiving medical reports concerning the Plaintiff;

(b)    The medical care and treatment which would be provided to the Plaintiff was controlled by the Defendant;

(c)    The Defendant had before it Dr. Holworth's recommendation that the Plaintiff have surgery immediately and the Defendant knew of the importance of the surgery to the Plaintiff;

(d)    The Defendant knew that if the surgery was not done immediately irreparable harm would result to the Plaintiff.

4.    Plaintiff would state that due to the special circumstances which existed between Plaintiff and Defendant as alleged the Plaintiff would state that the Defendant was required to disclose truthful information to the Plaintiff and that the following information should have been disclosed to the Plaintiff:

(a)    That the Defendant did not have Plaintiff's care and treatment reviewed by an independent medical examiner;

(b)    That the Plaintiff had no evidence in its files to deny the Plaintiff medical care and treatment as recommended by Dr. Holworth and Dr. Shirah;

33

> (c)    That there was no medical basis for the denial of care and treatment to the Plaintiff as recommended by Dr. Holworth and Dr. Shirah.

> 5.    Plaintiff would state that had he known the truth and had misrepresentations not been made to him by the Defendant he would have sought other care and treatment immediately but he was relying upon the representations of the Defendant with respect to the provision of medical care and treatment.

In light of the allegations of the Complaint and in analyzing whether the Plaintiff has stated a cause of action upon which relief can be granted with respect to suppression of material facts each element of what a Plaintiff must prove in order to recover for fraudulent suppression must be analyzed.

The following is an analysis of the facts in this case as to each element that is required to state a cause of action for fraudulent suppression:

<u>ELEMENT ONE</u>

1.    **That the Defendant had a duty to disclose the existing material fact.**

Alabama Pattern Jury Instruction 18.08 (Exhibit 9 attached to the Evidentiary Submission filed herewith) provides in part as follows:

> In determining whether the Defendant was under a duty to disclose, you may consider the value of the particular facts involved, the relative knowledge of the parties, any inequality of the condition of the parties, the relative bargaining position of the parties and whether the Defendant has some particular knowledge, means of knowledge, or expertise not shared by the Plaintiff.

34

As alleged in the Complaint, the Plaintiff herein states that the circumstances giving rise to the duty to disclose arose from the following facts:

(a)     Defendant herein was the only one receiving medical reports concerning the Plaintiff;

(b)     The medical care and treatment which would be provided to the Plaintiff were controlled by the Defendant;

(c)     That the Defendant had before it Dr. Holworth's recommendations that the Plaintiff have surgery immediately and that the Defendant knew of the importance of the surgery to the Plaintiff from a time standpoint; and

(d)     That the Defendant knew that if the surgery was not done immediately irreparable harm would result to the Plaintiff.

Ms. Heppes stated that she was aware of the contents of Dr. Holworth's October 27 memorandum. (Exhibit 10, attached to the Evidentiary Submission and Dep. of Heppes, Page 136, Lines 13-16, Exhibit 1 to the Evidentiary Submission.) This memorandum disclosed to Ms. Heppes that Dr. Holworth was recommending that surgery be done **immediately** and that failure to do so would apparently result in harm to Mr. Brown. Mr. Brown had not been told by Dr. Holworth that irreparable harm could result as stated in his office notes. (Affidavit of Brown, Exhibit 2 to Evidentiary Submission.)

Ms. Heppes knew that Mr. Brown was in pain and was begging for help. At this point in time he was 30 days out from his injury and was suffering to the point of on occasion yelling in pain over the phone to Ms. Heppes. Since CMI only was controlling how the care would be provided to Mr. Brown the knowledge possessed by them, which Mr. Brown was unaware of, would certainly be relevant and material to him in determining what his course of action would be. It certainly could not be argued by Defendant that it would not be important for the Plaintiff to be told that his doctor had stated that if he did not get surgery immediately and within six weeks that irreparable harm could result to him. Defendant CMI had before it information from Dr. Holworth that was vital to the health of another human being. That information should certainly give rise to duty on the part of CMI possessed with this knowledge to disclose to the Plaintiff that the doctor was saying surgery should be done immediately and that to wait could cause harm to him.

In analyzing the factors referenced by Alabama Pattern Jury Instruction 18.08 as to the facts in this case the following is apparent:

(1)    The value of the particular facts involved - The facts which CMI knew were certainly important to Mr. Brown.

(2)    The relative knowledge of the parties - CMI knew and Mr. Brown did not know what Dr. Holworth had told them with respect to the immediate need for surgery.

(3)    Any inequality of the condition of the parties - CMI is certainly much more sophisticated than Mr. Brown and deals in these matters everyday as opposed to Mr. Brown.

(4)    The relative bargaining position of the parties and whether the Defendant had some particular knowledge - Mr. Brown was without a bargaining position.  He was at the total mercy of CMI and they knew this. CMI had all the information that should have been disclosed it to the man whose health was at stake.  CMI chose to withhold this valuable information from him.

The Defendant in its brief chose not to address the facts necessary to establish the first element of a suppression claim.  The Plaintiff herein would state that it has met its burden to establish by the record that the requirements of Element One of a suppression case have been met.  There is no argument by the Defendant that the evidence does not meet all the requirements to satisfy Element One.

## ELEMENT TWO

The Plaintiff is required to prove that the Defendant suppressed material facts. The Plaintiff alleges that the material facts suppressed from him by the Defendant which it had a duty to disclose were:

(a)    That the Defendant did not have the Plaintiff's care and treatment reviewed by an independent medical examiner;

(b)    Defendant had no evidence in its files to deny the Plaintiff medical care and treatment as recommended by Dr. Holworth and Dr. Shirah;

(c)    That there was no medical basis for the denial of care and treatment to the Plaintiff as recommended by Dr. Holworth and Dr. Shirah.

The argument put forth by Defendant with respect to this Element can be summarized by stating as follows: "The Defendant states that no information was withheld from the Plaintiff." In the Defendant's brief the Defendant then undertakes to analyze a myriad of facts which really have nothing whatsoever to do with the facts which the Plaintiff alleges were suppressed from him. The Defendant undertakes to talk about examination of the Plaintiff by Dr. Holworth on October 27; that a Surgery Request Form was faxed to Dr. Holworth, and, that it was signed by Dr. Holworth on October 30 but claimed not to be returned to CMI until November 15. Defendant states that Claims Management could not possibly have suppressed any material fact regarding approval or denial of the Plaintiff's surgery until November 15. It argues that

38

Ms. Miller testified she did not schedule the Plaintiff's surgery prior to its approval on November 16, 2004. It claims that there is no evidence to show that the Plaintiff's surgery was every cancelled or denied by Defendant CMI. It then states, "There was simply no suppression."

Why the Defendant chooses to ignore the literal interpretation of what the Plaintiff claims to have been suppressed is unknown to the Plaintiff. The Plaintiff specifically detailed the material facts that it deems to have been suppressed from him yet there is **no argument** to the Court in the Defendant's brief on these particular facts.

In a true analysis of whether a cause of action has been stated for suppression of material facts, the facts which the Plaintiff contends were suppressed must be examined.

The first fact claimed to be suppressed is, "That the Defendant did not have Plaintiff's care and treatment reviewed by an independent medical examiner." In this case it has been shown that the Defendant repeatedly told the Plaintiff that his records had to be reviewed by a doctor before she could get approval for surgery. This was the representation made to him. Ms. Heppes stated at Page 198 in her deposition (Exhibit 1 to Evidentiary Submission):

Q.   So did you tell Mr. Brown that his case had to be reviewed by a doctor before he could get approval for surgery?

A.   I may have.

Mr. Brown states that she did.  (Dep. of Brown, Page 71, Lines 9-11, Exhibit 4 to the Evidentiary Submission.)

Plaintiff states herein that as opposed to telling Mr. Brown that his care and treatment had to be reviewed by an independent medical examiner he should have been told that his care and treatment did not have to be reviewed by another doctor.  CMI suppressed this fact from him.

In the Defendant's response to Interrogatories, CMI admitted that it had not sought advice from any physician.  (Interrogatory No. 4 and Answer thereto, Exhibit 6 to Evidentiary Submission.)

In response to Request for Admissions No. 4, Defendant CMI admitted that the requested surgery was approved by the adjuster and no additional physician's review was necessary.  (See Exhibit 5 to Evidentiary Submission.)

Plaintiff would respectfully state that the Defendant had a duty to disclose to the Plaintiff that his care and treatment did not have to reviewed by a medical examiner.

As Mr. Brown has stated in his affidavit had he known that he did not have to have his care and treatment reviewed by an independent medical

examiner he would have sought medical care and treatment elsewhere. (Affidavit of Brown, Exhibit 2 to Evidentiary Submission.)

2.    The Second Fact which Plaintiff claims was suppressed from him was: **That the Defendant had no evidence in its files to deny the Plaintiff medical care and treatment as recommended by Dr. Holworth and Dr. Shirah.**

As Ms. Heppes stated in her deposition at Page 199, Lines 10-13 Exhibit 1 to the Evidentiary Submission, "there was nothing in the records of CMI to indicate that the rotator cuff surgery was not medically necessary." Plaintiff could have immediately sought legal assistance to help force the Defendant to perform its duty with respect to him had he simply been told that everything was in place in his file and that the medical care and treatment recommended by Dr. Holworth and Dr. Shirah should be carried out.

3.    This same argument applies to the third material fact alleged to be suppressed from him, **"That there was no medical basis for the denial of care and treatment to the Plaintiff as recommended by Dr. Holworth and Dr. Shirah."**

Again, had it been disclosed to Mr. Brown that there was no medical basis for denying his care and treatment he could have sought legal help and

forced the Defendant to immediately provide the surgery and care and treatment that Dr. Holworth said he so desperately needed.

For the stated reasons there is ample evidence before the Court when viewed in the list most favorable to the Plaintiff to support Element Two of this cause of action. No evidence in opposition supplied by the Defendant is directed to the issues in question concerning this element of the suppression of material facts. They simply chose not to address this element in the brief.

### ELEMENT THREE

The Plaintiff must show that the suppression induced the Plaintiff to act or refrain from acting. Mr. Brown has stated in his affidavit that had he been told the facts alleged to have been suppressed he would have sought legal help and would have immediately secured the necessary medical care and treatment which should have been provided to him. (Affidavit of Brown, Exhibit 2 to Evidentiary Submission.)

The Defendant has made no argument in its brief that Plaintiff has not met his burden of proof with respect to this element.

### ELEMENT FOUR

Plaintiff must show that he suffered actual damage as a proximate result.

As stated to the Court, Dr. Holworth made it clear that the surgery needed to be performed **immediately.** Performing the surgery outside a six

42

week window would be detrimental to the Plaintiff. The surgery in question was performed not within six weeks but rather nine weeks after the Plaintiff's initial injury.

As stated by Mr. Brown in his affidavit, he has had to undergo another surgery and was told by Dr. Holworth after the surgery that had he been able to perform the surgery earlier he could have repaired his rotator cuff by using a laser rather than having to insert pins in Mr. Brown's shoulder which subsequently failed.    (Affidavit of Brown, Exhibit 2 to Evidentiary Submission.)

Mr. Brown had to undergo a subsequent surgery and the additional pain, suffering and rehabilitative time necessitated by the second surgery.

**In summary** as to whether the Plaintiff has stated a cause of action with respect to suppression of material facts, Plaintiff would respectfully state to the Court that the Defendant herein directs its argument to matters that really are not relevant to the question of whether the Plaintiff has met his burden of proof with respect to putting forth evidence concerning the particular suppression of material facts as alleged in the Complaint. Plaintiff would further respectfully state that each of the three facts is a separate cause of action. It is not necessary for the Plaintiff to prove facts as to all three to survive Summary

Judgment.  Each must be judged on its own merit and whether  facts support

each one.

The Plaintiff herein has tried to assist the Court in looking at whether

there is evidence in the record to support the elements required to prove

fraudulent suppression. The Defendant, on the other hand, simply argues facts

which mostly have nothing to do with what is alleged in the Complaint as

concerns Count Three.

The burden is upon the Defendant to clearly prove to the Court why the

elements cannot be proven.  It has not done so.  It has not addressed the

elements nor talked about what evidence related to each element.  Plaintiff

would state that the Defendant has not met its burden to support Summary

Judgment.

As an example of the "shotgun approach" of the Defendant to this Count,

beginning at Page 32 in the Defendant's Brief, it goes into a long argument

concerning this issue as to whether or not there was evidence that the

Defendant acted intentionally to withhold information from the Plaintiff.

Whether the act was intentional or deliberate has nothing to do with whether

the Plaintiff has stated a cause of action concerning suppression. There simply

is no requirement that the Plaintiff prove that the Defendant acted

**intentionally** to withhold information in order to be able to state a cause of action. It is not an element required to be proven in fraudulent suppression.

The question concerning this cause of action does not turn on when the surgery was actually performed but rather upon the damage done to Mr. Brown by the suppression of material facts as alleged herein. Mr. Brown was not told facts material and relevant to his case by the Defendant which should have been disclosed by the Defendant to him. Failure to disclose these facts to Mr. Brown caused him to simply rely upon what was being stated to him as opposed to acting to protect his own interest had he been told the truth. As Mr. Brown stated in his affidavit, if they had been truthful with him he would certainly have done other acts to compel treatment immediately as recommended by Dr. Holworth.

For the reasons stated herein the Defendant's Motion for Summary Judgment with respect to Count Three is due to be denied.

# COUNT FOUR

The Plaintiff has alleged that the Defendant was negligent in its handling of the Plaintiff's claim for workmen's compensation benefits. The Plaintiff alleged that the Defendant had a duty to procure timely medical care and treatment for him and that it breached this duty.

The Defendant herein correctly stated that § 25-5-11(a) of the Alabama Workmen's' Compensation Act provides in pertinent part as follows:

> If a party, other than the employer is a workers' compensation carrier of the employer, ... responsible for servicing and payment of workers' compensation claims for employer ... the injured employee ... may bring an action against any workers' compensation insurance carrier of the employer or any person, firm, association, trust, fund, or corporation responsible for servicing and payment of workers' compensation claims for the employer ..., **only for willful conduct which results in or proximately causes the injury or death**.

Defendant herein states that it agrees that a cause of action could be stated against CMI for willful conduct which results in or proximately causes injury.

The United States Supreme Court recognized in <u>Rogers</u>, 352 U.S. at 506, 77 S. Ct. 443:

> A jury question is presented if "employer negligence played any part, even the slightest, in producing the injury or death."

46

If there is substantial evidence to support the question of a breach of duty then the question of wantonness is for the jury. <u>Jones v. Norfolk Southern Railway Company</u>, 787 So.2d 699 (Ala. 2000).

As stated in the Summary Judgment standard, the burden is upon the Defendant to set forth its basis for the summary judgment motion; then and only then the non-moving party must set forth the facts showing a genuine issue for trial.

In attempting to defeat Count Four of Plaintiff's Complaint the Defendant herein correctly cites to the court that the Plaintiff can state a cause of action only for willful conduct which results in or proximately causes injury. The only argument against Count Four in Defendant's brief is the following statement:

> The Plaintiff has failed to plead or prove any such willful conduct. (See Defendant's Brief, Page 35, First Paragraph, Line 4.)

The Plaintiff has alleged that Claims Management breached its duty to timely process the Plaintiff's request for approval of surgery and to timely provide medical care. (Amended Complaint, Paragraph 2, Count Four, Exhibit 8 to Evidentiary Submission.)    The Plaintiff further stated that as a consequence of the alleged breach of duty the Plaintiff's surgery was not timely performed and his rehabilitation was delayed, thereby causing a painful and

difficult recovery, as well as permanent disability and severe emotional distress.    (Amended Complaint, Paragraph 4, Exhibit 8 to Evidentiary Submission.)

The Defendant stated in its argument on Page 34 that the Plaintiff's allegations of negligence are absolutely barred by the exclusivity provisions of the Alabama Workers' Compensation Act.    The Defendant then cites the provisions of the Act as stated above.  Defendant then contradicts its argument by recognizing that the Plaintiff may bring an action under § 25-5-11 against the workers' compensation servicer of his employer, such as Defendant Claims Management, for willful conduct which results in or proximately causes his injury.

Simply stating that "the Plaintiff has failed to plead or prove any such willful conduct" without supporting this argument by reference to any evidence does not place a burden upon Plaintiff to come forward with evidence in support of this allegation.

There are no facts cited by the Defendant to support its claim that the conduct of CMI was not willful conduct.  In fact, there is no reference to any of the facts of the case whatsoever in the argument put forth by the Defendant to serve as its basis for the grant of Summary Judgment with respect to Count Four.

The Defendant stated in its argument that, "However, it is not necessary to address whether the Defendant Claims Management breached any duty, nor is it necessary to address the nature and extent of the Plaintiff's alleged damages." (Defendant's Brief, Page 34, First Paragraph, Lines 10-12.)

The Defendant for whatever reason states in its brief that the Supreme Court of Alabama has "consistently refused to recognize a cause of action for the negligent handling of insurance claims, and it will not recognize a cause of action for wanton handling of insurance claims." This may be true but does not have any application to workers' compensation claims as the cause of action alleged by the Plaintiff is clearly permissible under Ala. Code § 25-5-11(a).

A defendant cannot simply make a one sentence assertion that, "The Plaintiff has failed to plead or prove any such willful conduct" without supporting this allegation by references to the facts of the case as the basis for the grant of Summary Judgment.

Plaintiff would respectfully state that Defendant shifted no burden to the Plaintiff whatsoever to come forward with any evidence or facts to refute the Defendant's claim with respect to Count Four where the Defendant did not put any such argument or facts before the Court in support of its Motion for Summary Judgment with respect to Count Four.

Plaintiff herein would respectfully state that a jury question has been presented as to whether the Defendant willfully breached its duty to the Plaintiff by failing to provide timely medical care. Were the Complaint not stating a cause of action for a willful breach of duty there would not have been a claim for punitive damages. This count in the Complaint asks for punitive damage for willful conduct and can not be interpreted otherwise.

When viewed in the light most favorable to the non-movant this Court must deny Summary Judgment with respect to Count Four of the Complaint.

## CONCLUSION

The Defendant in its conclusion remarkably makes the following bold assertion:

> All requests for treatment, including but not limited to the October MRI and the November surgery, were responded to promptly and there has been absolutely no withholding of any medical treatment. The Defendant Claims Management never cancelled any surgery, Defendant Claims Management never told the Plaintiff that no surgery would be allowed until additional medical doctors recommended the same, and the Defendant Claims Management never attempted to dissuade the Plaintiff from seeking treatment.

As hopefully succinctly pointed out to the Court by references to the record, Plaintiff would respectfully state that the Defendant must be looking at the facts in another case to make such bold and false assertions as are stated in the above paragraph from its conclusion argument.

It is **UNDISPUTED** that: (1) an employee was injured on September 28, 2004; (2) a diagnosis of torn rotator cuff was confirm by an October 15, 2004, MRI; (3) this fact was conveyed to the workmen's compensation insurance carrier, CMI, and (4) the carrier received information on October 27, 2004, that surgery was needed **immediately** and failure to allow the worker to undergo surgery before the expiration of six weeks would greatly compromise his chances of recovery. The Plaintiff has shown to this Court by Victoria Heppes' own testimony that she called the Plaintiff and advise him that she had

cancelled his surgery scheduled in October causing the delay of the surgery to November 29. The facts and evidence in the case simply do not support the conclusion reached by the Defendant in this case.

Plaintiff would respectfully state that the Plaintiff has proven to this Court by evidence that CMI caused delay in the surgery from the first Monday following October 27 until November 29. Incredibly, the Defendant stated in its Conclusion section that, "The surgery was not scheduled for October." On two occasions in Victoria Heppes' testimony she acknowledged that she cancelled the surgery scheduled for October. How can the Defendant state that it was not scheduled when she cancelled it?

Defendant further argued that the only delay caused by them was a delay of 19 days, i.e. between the October 27 visit and November 15. The fact is the surgery was not performed on November 15 but on November 29. Four weeks passed after the Defendant knew that there was an immediate need for the surgery as was clearly conveyed to the Defendant by Dr. Holworth's office on October 27.

A jury could certainly conclude that considering the condition that Mr. Brown was in where he was begging and pleading for help and in excruciating pain, that the treatment received from CMI was such that no person in a civilized society would treat another in this manner. The pain Mr. Brown was

experiencing was real. This was recognized and known by CMI yet they did nothing to assist him in getting the medical care and treatment that he needed in a timely fashion.

Mr. Brown is an economically deprived individual, with little education, who was at the mercy of a company he did not know who certainly knew the ropes as to the provision of workers' compensation benefits more than he did. He was in a bad way and only had a deaf ear turned to him.

Finally, the Defendant cannot simply state with respect to Count Four that there is no cause of action stated for the negligence claim and be entitled to Summary Judgment as a matter of law with this one statement. Plaintiff would respectfully state that no burden was ever shifted to the Plaintiff to address any basis argued by the Defendant for the grant of Summary Judgment with respect to Count Four.

Plaintiff would respectfully state that the Defendant is not entitled to Summary Judgment on any Count as alleged in the Complaint.

Respectfully submitted this 21st day of September, 2006.

John A. Tinney        TIN005
Attorney for Plaintiff
Post Office Box 1430
739 Main Street
Roanoke, Alabama 36274
(334) 863-8945

53

## CERTIFICATE OF SERVICE

This is to certify that I have this day served counsel for the opposing party in the foregoing matter with a copy of this pleading by faxing or by depositing a copy of the same in the United States Mail, in an envelope with adequate postage prepaid thereon and properly addressed to him.

Jeffery A. Brown
Post Office Box 139
Columbus, Georgia  31902-0139

This 21st day of September, 2006.

John A. Tinney TIN005
Attorney for Plaintiff
Post Office Box 1430
Roanoke, Alabama  36274
334-863-8945