IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| EMORY STEVE BROWN, | * | CASE NUMBER: |
| | * | 3:05-CV-00681-WKW |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| CLAIMS MANAGEMENT, INC., | * | |
| | * | |
| Defendant. | * | |

DEFENDANT CLAIMS MANAGEMENT, INC.'S
BRIEF IN REPLY TO THE PLAINTIFF'S BRIEF IN OPPOSITION TO THE
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Comes Now the defendant, Claims Management, Incorporated (hereinafter referred to as the defendant Claims Management), and files its Brief In Reply To The Plaintiff's Brief In Opposition To The Defendant's Motion For Summary Judgment.

CITATION OF AUTHORITY AND ARGUMENT

I.    The Defendant's Response To The Plaintiff's Narrative Statement Of Undisputed Facts.

The defendant Claims Management agrees with the plaintiff's narrative statement of undisputed fact as stated on pages 2-3.

On pages 3-4, the defendant Claims Management adds that Dr. Shirah received the results of the plaintiff's MRI on October 22, 2004, 24 days following the plaintiff's initial injury.

1

On page 4, the defendant acknowledges that Ms. Heppes provided testimony substantially as outlined by the defendant under the subheadings (a), (b), and (c). However, the defendant adds that these three statements culled out of 200-plus page transcript must be viewed in the context of Ms. Heppes overall testimony and in connection with other duties, rules, and procedures she was bound to follow in her employment.

On page 5, the defendant disputes the plaintiff's assertion at subheading (3) that Ms. Heppes was aware on  October 22, 2004, that Mr. Brown needed surgery.  The testimony cited by the plaintiff is ambiguous at best and it is best to review it in connection with surrounding testimony:

Q.      So we've got a statement to you on October 22nd that he has a right rotator cuff tear.  Dr. Shirah is telling you that the MRI shows that he has a right rotator cuff tear.

A.      Yes.

Q.      Tell me what your duty and responsibility to Mr. Brown was at that time to provide treatment for him.

A.      My first duty is to fax over -- when I talk with Kenny and he says, he has a right rotator cuff tear and he needs surgery, then I fax over a request for surgery to the doctor for the doctor to fill -- oh, no.  On the 22nd?

Q.      Right.

A.      He said that he needs to be referred to an orthopedic specialist.

2

Q.     That is when you started your seeking of an orthopedic specialist;
       is that right?

A.     Yes.

Heppes dep., p. 121, ln. 7-23.

Clearly on the 22nd Ms. Heppes was aware that Dr. Shirah had recommended that the plaintiff be referred to an orthopedic specialist. However, it appears that she was initially mistaken and then corrected herself when she said, "...then I fax over a surgery request for the doctor to fill out -- oh, no. On the 22nd?" It appears that she may have momentarily confused October 22nd with October 27th, on which date she did in fact fax a surgery request form to Dr. Howorth's office.

On page 7, at the second complete paragraph, the defendant objects to the plaintiff's assertion that "on October 27, 2004, Dr. Holworth [sic] scheduled Mr. Brown for surgery on October 27." First, it is clear from all the materials in the records that no surgery was scheduled to take place on that date, as that was the date of the initial visit by the plaintiff to the orthopedic specialist, Dr. Howorth. The defendant acknowledges that the plaintiff has testified that he was of the belief that when he left Dr. Howorth's office on October 27, 2004, that a surgery date had been scheduled for him for October 31, 2004.     However, based on the testimony of Amy Miller, office assistant for Dr. Howorth, the defendant asserts that the plaintiff was mistaken in his belief. Ms. Miller testified that she was Dr. Howorth's employee

responsible for scheduling the plaintiff's surgery. (Miller dep., p. 34, ln. 9-22; p. 46, ln. 4-6). She testified that she had no record that the plaintiff's surgery was ever canceled or that it was ever necessary to reschedule his surgery. (Miller dep., p. 33, ln. 17 - p. 34, ln. 1). Ms. Miller further testified that the plaintiff's surgery was not approved by the defendant Claims Management until November 16, 2004, and she would not have scheduled the plaintiff's surgery until it had been approved by the defendant. (Miller dep., p. 34, ln. 2-5).

Also on page 7 and continuing to page 8 of the plaintiff's brief, the defendant Claims Management asserts that the following testimony by the plaintiff regarding statements made to him by Dr. Howorth constitute hearsay and are therefore inadmissible:

(a)     "Dr. Holworth [sic] told him he wanted to do surgery on the following Monday."

(b)     "Dr. Holworth [sic] told Mr. Brown to go to the hospital and get pre-opped and ready to go in."

(c)     "Dr. Holworth [sic] had advised Mr. Brown that physical therapy would not do him any good until his shoulder was fixed."

Also on page 8, the defendant Claims Management acknowledges the plaintiff's contention that Ms. Heppes called the plaintiff on the date of his initial visit with Dr. Howorth, October 27, 2004. However, the defendant objects to the plaintiff's

characterization that Ms. Heppes "denied" the plaintiff's surgery.  Again, the testimony

must be taken as a whole, rather than misrepresented based on a small excerpt.

> Q.    Emory testified that Dr. Howorth told him -- in his deposition, that Dr. Howorth told him he had to have surgery and set him up to do it, I think, on the following Monday and before he even got home you had cancelled the surgery.  Did you cancel his surgery?

> A.    I need this medical request, so it was -- did I cancel it, I said, wait until we get the medical request so that it can be approved.  It has to be approved before it can be scheduled.

> Q.    So you did stop the surgery?

> .....

> A.    That's my process.  So if they ordered surgery I said that I needed the surgical request back and the medical notes before it could be approved and that we would, if I did say that, I'd say we have to postpone it until all the medical records are in.

> Q.    Emory said you called his house before he even got home and told someone that you had cancelled it or stopped it; is that correct?

> A.    Yes.

Heppes dep., p. 205, ln. 5 - p. 206, ln. 3,  [Emphasis added].

It is readily apparent from Ms. Heppes testimony that she was not denying the

plaintiff's claim as he has alleged.  The clear implication of Ms. Heppes testimony is

that she was waiting to receive all of the necessary medical information before

approving surgery.   The "Yes" answer given at page 206, line 3 of her deposition and

cited by the plaintiff as her admission that she cancelled surgery is merely her

acknowledgement of what "Emory said," but is not to be taken as an admission by her.

Also on page 8, the defendant Claims Management disputes the plaintiff's testimony that Ms. Heppes told him that Claims Management wanted two more doctor's opinions before approving surgery.

Again on page 8, the defendant Claims Management disputes the plaintiff's characterization of Ms. Heppes testimony at page 205 of her deposition as an admission that she canceled surgery. As stated above, the "Yes" answer given at page 206, line 3 is merely her acknowledgement of what "Emory said," but is not to be taken as an admission by her.

On page 9, the defendant Claims Management objects to the statement, "Dr. Holworth's [sic] office told Mr. Brown that they sent the records back to Ms. Heppes the SAME WEEK that CMI asked for the same." This statement is hearsay and therefore is inadmissible. The undisputed testimony on this subject provided by Dr. Howorth's employee, Amy Miller, states that the surgery request form was not faxed to Ms. Heppes at Claims Management until November 15, 2004. (Miller dep., p. 30, ln. 13-23; p. 45, ln. 11-17).

Also on page 9, with reference to the plaintiff's comment that, on October 27, 2004, Ms. Heppes was told that Dr. Howorth was recommending immediate surgery, the defendant Claims Management states that nowhere in the testimony cited by the plaintiff is the date of October 27, 2004, mentioned.

6

On page 10, the plaintiff enumerates four statements based on the plaintiff's deposition and affidavit.  The theme of each of these statements is that Ms. Heppes represented to the plaintiff that she needed an additional doctor or doctors to review information concerning the plaintiff.  The defendant Claims Management asserts that there is a genuine issue of material fact as to each of these statements.  Ms. Heppes has denied making any such statements to the plaintiff.

Also on page 10 and continuing to page 11, the plaintiff identifies three "admissions" by Ms. Heppes.  The defendant Claims Management denies that the first such statement is an admission, as Ms. Heppes only stated that she "may have" told Mr. Brown that his case had to be reviewed.

On page 11, with reference to the statement that the defendant Claims Management "claims" that they did not receive the surgery request form from Dr. Howorth until November 15, 2004, the defendant asserts that said statement is corroborated by the testimony of both Ms. Heppes and Ms. Miller.  (Heppes dep., p. 144, 19-21; Miller dep., p. 30, ln. 13-23; p. 45, ln. 11-17).

On page 11 and continuing to page 12, the defendant Claims Managment objects to the defendant's unsupported statement that twenty days passed with the plaintiff "continuing to be in pain and getting no relief or help from anyone."  The statement is unsupported and operates as a conclusion rather than a fact.  The defendant additionally denies any implication in the statement that such twenty day period was caused in any

part by the actions of Claims Management.

On page 12, the defendant Claims Management objects to the plaintiff's testimony that he "was told" by Dr. Howorth's office that they had sent "everything they had" to Claims Management on that day. The testimony is hearsay and therefore is inadmissible. Additionally, even if the testimony were admissible, it contains no reference to the date on which such representation was made by Dr. Howorth's office. The plaintiff again respectfully refers the Court to the undisputed testimony of Dr. Howorth's employee, Ms. Miller, who stated that the surgery request paperwork was not faxed to Claims Management until November 15, 2004. (Miller dep., p. 30, ln. 13-23; p. 45, ln. 11-17).

Also on page 12, the defendant Claims Management objects to the plaintiff's contention that the defendant, through Ms. Heppes, was aware of the contents of Dr. Howorth's October 27, 2004, memo. The exhibit cited in support of this statement is merely a copy of Dr. Howorth's memo and is not evidence of the knowledge of the defendant or Ms. Heppes to its contents.

On page 12 and continuing to page 13, the defendant Claims Management stresses that the undisputed testimony of Ms. Miller, which is cited by the plaintiff in support of his statement, is that it was her responsibility as Dr. Howorth's employee to schedule the plaintiff's surgery once receiving notice from Claims Management that the surgery was approved. (Miller dep., p. 40, ln. 20 - p. 43, ln. 10). She testified that

10 to 14 days was the average waiting period between the time a patient's surgery was approved and the time it actually occurred.  (Miller dep., p. 37, ln. 4-10).

On page 13, the plaintiff cites a long passage in Ms. Heppes deposition for support that Ms. Heppes did not approve the plaintiff's surgery until November 23, 2004.  The defendant Claims Management asserts that Ms. Heppes was mistaken in this instance, and the actual date of approval was one week earlier, on November 16, 2004.  This assertion by the defendant is supported by Ms. Miller's testimony and Exhibit 1 to her deposition.  (Miller dep., p. 25, ln. 5-25; p. 32, ln. 8-11; p. 45, ln. 18-22. On page 14, the defendant Claims Management objects to the statements contained in the first and second full paragraphs of that page in their entirety.  All of the statements refer to the plaintiff's testimony, whether through deposition or affidavit, as to what he claims he has been told by Dr. Howorth.  The statements are hearsay and are not admissible as evidence.


I.    The Plaintiff's Claim For Fraud Fails As A Matter Of Law.

Under Alabama law, in order to recover for fraud, the plaintiff must prove:  (1) a misrepresentation of a material fact, (2) made willfully to deceive, recklessly, without knowledge, or mistakenly, (3) which was justifiably relied on by the plaintiff under the circumstances, and (4) which caused damage as a proximate consequence."  Foremost Insurance Co. v. Parham, 693 So.2d 409, 422 (Ala.1997), citing, Ala. Code § 6-5-101

(1975).    Additionally, under the rule established in Lowman v. Piedmont Executive Shirt Mfg. Co., 547 So.2d 90 (Ala.1989), the standard of proof is much more stringent in a fraud action brought by an employee against an employer.  The Lowman court held that for an employee-plaintiff to present to a jury a fraud claim brought against his employer, fellow employee, or employer's insurer, the employee-plaintiff must present evidence that if accepted and believed by the jury would qualify as clear and convincing proof of fraud.   Id. at 95, [emphasis added].   The Supreme Court of Alabama has taken this stand requiring a heightened standard of proof "in view of the exclusivity clause" as well as "[i]n order to ensure against borderline or frivolous claims."  Id.

In opposing the defendant's motion for summary judgment and in his complaint, the plaintiff alleges that the defendant's agent, Victoria Heppes-Greenspan (hereinafter "Ms. Heppes"), knowingly and falsely represented to the plaintiff that the defendant's in-house physician had stated that surgery was not medically necessary and that alternative treatment options were available.  (Complaint, Count One; Pl. brief, p. 21). The defendant Claims Management vigorously disputes the factual bases of the plaintiff's allegations.   In the defendant's responses to the plaintiff's request for admission number three, the defendant denied However, assuming for purposes of the defendant's motion for summary judgment  that the plaintiff's allegations are accurate with regard to the representations he claims were made to him by Ms. Heppes, the

plaintiff cannot show by clear and convincing evidence that he did in fact rely on the alleged representations.   Furthermore, the plaintiff also fails to present clear and convincing proof that he has been damaged as alleged in his complaint.

A.     The Plaintiff Has Failed To Prove The Element Of Reliance By Clear And Convincing Evidence.

In brief, the plaintiff states that his cause of action for fraud is based on the following:

> The representation claimed to have been made by Ms. Heppes to Mr. Brown was that she told Mr. Brown the following:

>> The in-house physician of the Defendant has stated that the surgery was not medically necessary and there were alternative forms of treatment available.   (Brown Affidavit, Exhibit 2 to Evidentiary Submission.)

Pl. brief at p. 20.

1.     The plaintiff's affidavit, attempting to establish the element of reliance, is a sham.

In the plaintiff's affidavit, signed and filed contemporaneously with the plaintiff's brief on September 21, 2006, and cited by the plaintiff on page 25 of his brief as support for his fraud claim, the plaintiff attempts to set up the reliance prong of his fraud claim by averring as follows:

> I was not told by Dr. Holworth [sic] that waiting to have the surgery any longer would cause me further damage.   He did not tell

11

me that it should be done within six weeks of the injury for sure as he told CMI in his report of the October 27, 2004, visit. I was not given a copy of his October 27, 2004, record or told of his recommendations made to CMI.

When I arrived at home on October 27, 2004, after the visit to Dr. Holworth's [sic], I was told that Victoria had called my house and said that the surgery had been cancelled.

I called her and she told me that my surgery was not medically necessary and that there were other forms of treatment available for me. I believed her and on this basis I did not do anything immediately. I did not go to see a lawyer to force them to get me my surgery immediately. I was at CMI's mercy and trusting them and relying on them to tell me the truth.

Pl. aff. at p. 4., Exhibit 2 to evidentiary submission attached to plaintiff's brief [Emphasis added].

The plaintiff's affidavit, signed on September 21, 2006, directly contradicts the testimony given by the plaintiff at his deposition on April 10, 2006:

Q.    Okay. All right. And he told you that you needed surgery, and he wanted it done on that Monday?

A.    Uh-huh (affirmative).

Q.    Is that yes?

A.    Yes, he wanted it done --

Q.    Okay. What else did he tell you about the surgery?

A.    He said it being so long -- he said he could already tell there was bursitis set up in it and it needed surgery immediately. And before I get back home, Victoria called and cancelled it.

Pl. depo. p. 69, ln. 20 - p. 70, ln. 10, [emphasis added].

.....

12

Q.    If you look back at it, can you close your eyes and specifically recall one particular conversation over all the others?

A.    Uh-huh (affirmative).

Q.    Okay.

A.    It's when I got back from Alex City, and she had denied me from having surgery on Monday.  I went to the store and went in there and called her from the store and told her she was killing me.

Q.    Okay.

A.    She said, "We're not planning on killing you."  I said, "But he wants me to have surgery, and you won't let me have it."

Q.    And that was within a couple of days after you first saw Dr. Howorth; right?

A.    That was when I got back from Alex City.

Q.    The same day?

A.    She cancelled it before I could even get back home.

Q.    But the same -- but it was the same day?

A.    Uh-huh (affirmative).

Q.    Okay.  That was yes?

A.    Yeah.

Q.    Okay.  When you left Dr. Howorth's office, did you have an appointment card to be at Russell Hospital or anything like that?

A.    They told me to go to the hospital on that Friday and get preadmitted and be ready to have surgery on Monday.  When I left there, that's all I knowed.  By the time I got home, my mother-in-law called and said Victoria had done cancelled it before I could

even get home.  So, I called him back.  He said he don't know why she cancelled it.  He said, "But you need the surgery."

Pl. depo. p.143, ln. 23 - p. 145, ln. 20 [emphasis added].

Mr. Brown's deposition clearly indicates that on October 27, 2006, the day of his initial appointment with Dr. Howorth, he already believed that Dr. Howorth wanted him in surgery "immediately."  This directly contradicts his later affidavit, signed and notarized on the date of filing of the plaintiff's brief, in which the plaintiff states, "I was not told by Dr. Holworth [sic] that waiting to have the surgery any longer would cause me further damage.  He did not tell me that it should be done within six weeks of the injury for sure as he told CMI ...."  Pl. aff at p. 4 (Exhibit 2 to evidentiary submission attached to pl. brief).

"A party is not allowed to directly contradict prior sworn testimony to avoid the entry of a summary judgment."  Continental Eagle Corp. v. Mokryzycki, 611 So.2d 313, 317 (Ala.1992), citing Doe v. Swift, 570 So.2d 1209, 1214 (Ala.1990).  "'When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.'"  Id., quoting Robinson v. Hank Roberts, Inc., 514 So.2d 958, 961 (Ala.1987).  Such an affidavit is properly viewed as a "sham" and should be disregarded on motion for summary judgment.  See, e.g., Liles v. Flatley, 643 So.2d

14

947, 947-49 (Ala.1994); Bama Budweiser of Montgomery, Inc. v. Anheuser-Busch, Inc., 611 So.2d 238, 245 (Ala.1992); Kessler v. Gillis, 911 So.2d 1072, 1080 (Ala.Civ.App.2004). The plaintiff has provided no explanation for his clearly contradictory testimony. Accordingly, the contradictory testimony is properly viewed as a sham and must be disregarded in consideration of the pending motion for summary judgment.

> 2.     The plaintiff did not rely on the alleged representations
> of the defendant.

Excluding the plaintiff's sham testimony and viewing all other evidence in the light most favorable to the plaintiff, the plaintiff's claim for fraud may be stated as follows:  the plaintiff believed Dr. Howorth wanted him in surgery immediately, but Ms. Heppes stated that surgery was not medically necessary and that the plaintiff should undergo alternative treatment.  However, the plaintiff did not rely on Ms. Heppes' alleged representation that surgery was not medically necessary.  If he had truly believed and relied upon Ms. Heppes' alleged representation, he would not have made numerous telephone calls to her, by his own admission sometimes yelling into the telephone that he needed surgery.  (Pl. brief, p. 30; Heppes dep., p. 114, ln. 9-11, p. 155, ln. 14-17).  Had he truly relied on her alleged representation, he would have accepted her alleged recommendation that he undergo physical therapy.  The following excerpts from the plaintiff's deposition testimony demonstrate that the plaintiff was at

no time relying upon the alleged representations of Ms. Heppes:

> Q.    Now, did you ever call Ms. Howorth -- not Ms. Howorth -- Ms. Heppes on November the 8th, 2004, and tell her that you did not want to do any physical therapy until after surgery?
>
> A.    Yes, I did.  I told her that Dr. Howorth said you can't rehabilitate something that ain't been fixed.  And she said, "We thought you could rehabilitate it first."  I said, "You can't if it ain't been fixed."
>
> Q.    Okay.  So, how did you find out that you were being told to go to physical therapy before the surgery?
>
> A.    She called -- she called my mother-in-law before I could even get back home.  He done had me scheduled for surgery, and she called and cancelled it and wanted me to do therapy.  And I called her back and told her there's no way I can therapy something that's tore up.  She said, "Well, you're true about that too."
>
> Q.    I didn't hear that part.
>
> A.    She said, "You're true on that too I guess."  I said, "I'm not going to let them hurt my shoulder worser until they fix it."  She said, "I understand."
>
> Pl. dep. p. 77, ln. 23 - p. 79, ln. 4 [emphasis added].

The plaintiff's fraud claim would make more sense if he stated that Ms. Heppes lied and told him that she was in the process of approving surgery when she really was not.  Then he might be able to make a sensible argument that he was trusting her and expecting and awaiting her approval.  But according to the plaintiff, Ms. Heppes informed him on the same day as his initial appointment with the doctor that she was not yet able to approve the surgery because she had not received the necessary

information from Dr. Howorth's office.    In other words, the plaintiff is asserting a fraud claim based on Ms. Heppes telling him the truth.

Ms. Heppes informed the plaintiff repeatedly during their telephone conversations that she had not approved his surgery and told him the reasons why she was unable to approve the surgery.  The plaintiff admits that Ms. Heppes informed him during the course of their telephone calls that she needed additional information from Dr. Howorth's office before his surgery could be approved:

> Q.    But you contend that you talked to her and she said that she wouldn't let you have surgery until two other doctors looked at it?
>
> A.    Yeah.  She said we want -- and she said you need to get Howorth to send me everything he's got, MRI's and everything.   We need two more doctors to look at it.
>
> Q.    And did she say that she wanted to send you to a different doctor, or did--
>
> A.    No.  She just said she wanted two more doctors to look at them.
>
> Q.    Did she tell you where those doctor were going to be?
>
> A.    She didn't tell me where they was at.  She just said that I needed to get in touch with Howorth and get him to send her everything that he had on me so she could get two more opinions.
>
> Q.    Okay.  And did you talk to Dr. Howorth and tell them to send everything?
>
> A.    Yeah.  And they kept claiming he wasn't sending them the right stuff.  So, I had to call him back.  Then I'd call her back.  They finally send -- you know, finally sent her what she wanted because she finally okayed it on the 29th.

Q.     Okay.  How many times did you call -- did you ever go back to Dr. Howorth's office and ask him, "Will you please give me the records so I can send them"?

A.     No, I didn't.  I just -- he just told me he'd take care of it and send her what she had to have.  And every time I'd call her and ask her did she get what he sent, she said, "No, he didn't send her everything she needed."  And I'd call him back and ask him please send her whatever she needs.  Call her and find out what she needs  and please send it to her so I could get the surgery done.

Pl. dep. p. 73, ln. 11 - p. 75, ln. 9 [emphasis added].

.....

Q.     Okay.  Okay.  Do you know how many times Ms. Heppes had to call Dr. Howorth to ask them to please send the appropriate --

A.     I don't really know how many times she called.  I called every week, and she said they hadn't never sent her what she needed.

Q.     Okay.  And after she would tell you that, you would call Dr. Howorth?

A.     Yeah.

Q.     And Dr. Howorth would say, "Well, we've already sent everything"?

A.     "We've sent everything we've got."

Q.     And then you would do what, call her back.

A.     Call her back.  And she'd say they still ain't got everything.  I don't know why she kept doing it.

Pl. dep. p. 76, ln. 8 - p. 77, ln. 4 [emphasis added].

18

This is consistent with Amy Miller's testimony that she did not fax Dr. Howorth's completed surgical request paperwork to Ms. Heppes until November 15, 2006 -- over two weeks after it had been completed. (Miller dep., p. 30, ln. 13-23; p. 45, ln. 11-17). Ms. Heppes could not have stated more clearly to the plaintiff that she needed his assistance in procuring additional records from Dr. Howorth's office, as she did not have the necessary information to approve or deny the surgical request. The plaintiff simply chose not to believe Ms. Heppes. The Alabama Supreme Court has stated:

> An essential element of any fraud claim is that the plaintiff must have reasonably relied on the alleged misrepresentation. Seward v. Dickinson, 844 So.2d. 1207 (Ala.2000); Foremost Ins. Co. v. Parham, 693 So.2d 409 (Ala.1997). This court explained reasonable reliance in Torres v. State Farm Fire & Casualty Co., 438 So.2d 757, 759 (Ala.1983): "If the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts, the plaintiff should not recover ...."

Waddell & Reed, Inc. v. United Investors Life Ins. Co., 875 So.2d 1143, 1160 (Ala.2003). [Emphasis added].

>     3.    The plaintiff's contention that he would have sought
>
>           alternative medical or legal remedies is purely
>
>           speculative.

Additionally, the plaintiff's statements in his affidavit that he would have sought alternative medical or legal remedies are inconsistent with other statements made in his affidavit. (Pl. aff., pp. 4-5, Exhibit 2 to evidentiary submission attached to plaintiff's

brief).  For instance, the plaintiff avers in his affidavit, "I was never in a position to get any care or treatment for myself concerning my workmen's compensation claim other than what was allowed by CMI."  (Pl. aff., p. 3, Exhibit 2 to evidentiary submission attached to plaintiff's brief).  In other words, the plaintiff is representing that he was unable to seek alternative medical treatment, in direct opposition to other statements sworn by him in the same affidavit.

Even if the plaintiff had been able to secure alternative medical or legal assistance, however, it is merely speculative whether this would have enabled him to undergo surgery more expeditiously than actually occurred.  The Alabama Supreme Court has stated, "Fraud is never presumed, and the party asserting fraud bears the burden of proving each and every element thereof."  Allen v. Gulf Life Insurance Company, 617 So.2d 664, 666 (Ala.1993).  The plaintiff Emory Brown merely speculates that he could have obtained alternative medical or legal assistance which would have thereby enabled him to undergo surgery sooner.  He has not shown by clear and convincing evidence that any alternative course of action which he might have resorted to would have secured approval and performance of his surgery at a significantly earlier date.

B.    The Plaintiff Has Not Been Damaged.

Finally, the plaintiff has failed to prove by clear and convincing evidence that he has been damaged as a result of the actions of the defendant.  He has provided

absolutely no medical evidence to support his claim of causation and damages.  He has declined to identify a medical expert.  He has not deposed or provided affidavits from any of his own treating physicians.  The only "evidence" that has been provided is hearsay testimony from the plaintiff concerning the opinions of his medical providers, most significantly Dr. Howorth.  For instance, the statement of facts contained in the plaintiff's brief reads as follow:

> At the time that Mr. Brown's surgery was finally done on November 29, 2005, Mr. Brown had to have pins put in his shoulder as opposed to his shoulder being repaired through laser treatment.  Dr. Holworth [sic] told him that they could have "lasered" his shoulder if they had not waited so long for the surgery.  Dr. Holworth stated that putting pins in was the best that he could do.  (Dep. of Brown, Page 165, Lines 16-23, and Page 166, Lines 714, attached as Exhibit 4 to the Evidentiary submission.)

> Pl. brief, p.14 [Emphasis added].

The section of the plaintiff's brief devoted to the element of damages, which he correctly notes "is required to be proved to state a claim for fraud" also contains only hearsay statements as to the plaintiff's alleged damages and whether such damage was proximately caused by the length of time between the plaintiff's injury on September 28, 2004, and surgery on November 29, 2004.  The plaintiff's brief states:

> Mr. Brown testified in his deposition that Dr. Holworth [sic] told him that he could have "lasered" his rotator cuff (Dep. of Brown, Page 165, Lines 16-23, Exhibit 4 to the Evidentiary Submission) as opposed to putting pins in the same (Dep. of Brown, Page 166, Lines 10-14, Exhibit 4 to the Evidentiary Submission).

21

As Mr. Brown has stated in his affidavit, the pins have shifted and Mr. Brown has had to undergo a second surgical procedure on his rotator cuff. (Affidavit of Brown, Exhibit 2 to Evidentiary Submission). The evidence before this Court is that Mr. Brown was told by Dr. Howorth that a second surgery would probably not have been necessary had he been able to operate on him earlier.

Pl. brief, pp. 25-26, [Emphasis added].

The plaintiff's affidavit, dated September 21, 2006, also relies solely on the plaintiff's inadmissible hearsay testimony regarding causation and damages:

I did not learn the content of this until after my surgery when Dr. Holworth told me that had my surgery not been delayed so long he could have repaired my shoulder by doing laser surgery instead of having to put pins in me. He said I would not have had to have the second surgery if he could have operated on me earlier.

The pins that were put in me did not align correctly and I had to undergo another surgery recently because of this.

Pl. aff., p. 5-6, Exhibit 2 to evidentiary submission attached with pl. brief, [Emphasis added].

The United States District Court for the Middle District of Alabama has clearly stated its position that "inadmissible hearsay cannot be properly used to oppose summary judgment, especially if it is not shown that admissible evidence to the same effect will be available at trial." Reeves v. Thigpen, 879 F.Supp. 1153, 1165 (M.D.Ala.1995). Hearsay is defined in the Federal Rules of Evidence as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). While hearsay is generally not admissible, there are numerous exceptions to this general

exclusionary rule.    See Fed.R.Evid. 802; see also Fed.R.Evid. 803 and 804. However, there is no exception to this general exclusionary rule which would be applicable to the hearsay statements relied upon by the plaintiff in his brief in opposition to the defendant's motion for summary judgment. As the plaintiff improperly attempts to rely on inadmissible hearsay, he cannot carry his burden of establishing a genuine issue of material fact and therefore, the defendant's motion for summary judgment must be granted.

In Reeves, supra., the plaintiff filed suit against her employer alleging violations of 42 U.S.C. §§1983 and 1985(c).  In responding to the defendant-employer's motion for summary judgment, the plaintiff provided an affidavit in which he asserted several statements regarding the previous conduct of several co-employees and the defendant employer's lack of action against said co-employees for their actions.   Reeves, 879 F.Supp. at 1162, fn 4.   Later in the proceedings, the plaintiff admitted that these statements amounted to hearsay.  Id. at 1164.  The defendant-employer moved to strike these statements contending that the statements were not based on the plaintiff's personal knowledge and that they constituted inadmissible hearsay, and therefore, those portions of the affidavit could not be utilized to support the plaintiff's opposition to the motion for summary judgment.  The court agreed with the defendant-employer.

In striking portions of the plaintiff's affidavit, the court stated the general rule that an affidavit being provided pursuant to Fed.R.Civ.P. 56(e) requires the affidavit to

23

"set forth such facts as would be admissible in evidence."  Fed.R.Civ.P. 56(e).  The defendant-employer argued that because the plaintiff's statements amounted to inadmissible hearsay, such statements could not be included in the plaintiff's affidavit in opposition to the defendant's motion for summary judgment.  Reeves, 879 F.Supp. at 1164.  Agreeing with the defendant-employer, the court stated that the "established law in this circuit is that the nonmoving party cannot properly and effectively use otherwise inadmissible hearsay to oppose a motion for summary judgment."  Reeves, 879 F.Supp. at 1165.  The plaintiff attempted to argue that the United States Supreme Court decision of Celotex v. Cattrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), stood for the proposition that the plaintiff could include hearsay information in an affidavit being submitted in opposition to a motion for summary judgment.  Id. at 1165.  Rejecting the plaintiff's argument, the court noted that numerous decision since Celotex, supra., clearly hold "that a court cannot properly consider inadmissible hearsay contained in Rule 56(e) affidavits."  Id. at 1165.  However, the court agreed that "evidence submitted in opposition to a motion for summary judgment need not be submitted in an admissible form." Id.  For example, the plaintiff could have supported her motion through the affidavit of a witness.  Id.  While the affidavit could support her opposition motion, the affidavit would be inadmissible at trial requiring the live witness to provide the relevant testimony.  Id. As the plaintiff's affidavit included inadmissible hearsay, the court could not consider same, and the court struck the

24

offending provisions of the plaintiff's affidavit from the record.

Chief Judge Mark E. Fuller considered this exact issue approximately two months ago in the case of King v. Kirkland's Stores, Inc., 2006 WL 2239203 (M.D.Ala.). In this unpublished opinion, Chief Judge Fuller once again restated the Middle District's position that a plaintiff may not rely upon inadmissible hearsay to oppose a motion for summary judgment.

In King, supra., the plaintiffs filed suit against the defendant-employer alleging claims for employment discrimination. King, 2006 WL 2239203, 1. The defendant-employer filed a motion for summary judgment, and the plaintiffs opposed the motion based on their deposition testimony. Id at 1. The defendant employer moved to strike portions of the plaintiffs' depositions concerning alleged statements made by other employees of the defendant-employer on the grounds that such portions did not constitute "proper summary judgment evidence." Id. The court agreed with the defendant-employer and struck the improper portions of the plaintiffs' depositions.

In reaching its decision, Chief Judge Fuller concluded that as with affidavits, deposition testimony can be utilized to oppose a motion for summary judgment only where such testimony satisfies the requirements of Fed.R.Civ.P. 56(e). Id at 1. This requires the testimony "to be made on personal knowledge from a witness competent to testify on the matters stated and to set forth facts as would be admissible in evidence." Id. at 1. Thus, the plaintiffs could not rely on "deposition testimony that constitutes

inadmissible hearsay, at least where that hearsay will not be reducible to admissible form at trial." Id.  As the plaintiffs' deposition testimony did not qualify for one of the various exceptions to the hearsay rule, the court struck the testimony from the record. Id.

As in both Reeves, supra., and King, supra., the plaintiff is attempting to rely on inadmissible hearsay to support his opposition to the defendant's motion for summary judgment. Instead of supplying the court with the affidavit or deposition of Dr. Howorth, the plaintiff has produced his own deposition testimony and affidavit instead.  Both are replete with inadmissible hearsay concerning the plaintiff's recounting of alleged statements previously made by Dr. Howorth to the plaintiff concerning his condition, the treatment of his condition, the outcome of his surgery, etc.  Each of these alleged conversations occurred outside of any trial and hearing. Further, the plaintiff attempts to utilize Dr. Howorth's alleged statements to prove his claim against this defendant, i.e. that the defendant's action caused him damage. Therefore, as the plaintiff's testimony concerns alleged statements made by Dr. Howorth outside of trial or any hearing, and as the plaintiff is offering these alleged statements to prove the truth of the matter asserted therein, the plaintiff's testimony provided for within the affidavit and deposition is the very definition of inadmissible hearsay, and cannot be utilized by the plaintiff to support his opposition to the defendant's motion for summary judgment. See Fed.R.Evid. 801(c).

26

The defendant recognizes that there are exceptions to the hearsay rule which allow hearsay to be admissible at trial. However, none of these exceptions apply to any of the statements offered by the plaintiff in support of his motion in opposition.

The plaintiff has had the opportunity to provide this court with appropriate Fed.R.Civ.P. 56(e) depositions and affidavits, and he has failed to take advantage of this opportunity. Rather, he has attempted to utilize inadmissible hearsay to create issues of fact for the Court's consideration. This is not proper, and the Court cannot consider such testimony. As it is the established law in this circuit that the nonmoving party cannot properly and effectively use otherwise inadmissible hearsay to oppose a motion for summary judgment, the plaintiff has failed to present this Court with any evidence to support his contention that he has been damaged by any action of this defendant, and therefore, the defendant's motion for summary judgment must be granted.

II.    The Plaintiff's Claim For Outrageous Conduct Fails As A Matter Of Law.

Alabama law recognizes that "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and for bodily harm resulting from the distress." American Road Service v. Imon, 394 So.2d 361, 365 (Ala.1981). The Alabama Supreme Court has emphasized the extreme nature of the conduct required and the

severity of the emotional distress expected to be endured:

> The emotional distress thereunder must be so severe that no reasonable person could be expected to endure it. Any recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme. Comment, Restatement, supra. at 78. By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society. Comment (d), Restatement, supra., at 72.

Id.

The Court has further cautioned that the tort was not meant to allow recovery for "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Id.at 364-365. Consequently, the Court "has consistently held that the tort of outrage is available in only the most egregious circumstances. As a consequence, this Court has held in a large majority of the outrage cases reviewed that no jury question was presented." Thomas v. BSE Industrial Contractors, Inc., 624 So.2d 1041, 1044 (Ala.1993). Furthermore, in the workers' compensation context, the court has stated that "we are constrained, in accomodation to the exclusivity provisions of the Act, to rule out all questionable claims." Lowman v. Piedmont Executive Shirt Mfg. Co., supra. at 95.

In support of his cause of action for outrageous conduct, the plaintiff briefly discusses one case, Travelers Indemnity Company. of Illinois v. Griner, 809 So.2d 808 (Ala.2001). In Griner, the plaintiff's evidence established that the insurer had a legal

obligation to pay for a hospital bed, a whirlpool bath, and psychiatric treatment for the plaintiff. Id. at 811. The evidence established that these items should have been but were not provided for a period of approximately five years. Id., [emphasis added]. Most critically, the court found that even though the insurer acknowledged that it was contractually obligated to provide the prescribed items to the plaintiff, the defendant-insurer withheld the items anyway, hoping that by doing so it would cause the plaintiff pain and frustration so that he would agree to a minimal settlement. Id. at 812.

Additionally, in support of his claim for outrageous conduct, the plaintiff instructs the court to "see also" Continental Casualty Insurance Company v. McDonald, 567 So.2d 1208 (Ala.1990). The plaintiff does not discuss this case, which has established "the minimum threshold that a defendant must cross in order to commit outrageous conduct." ITT Specialty Risk Services v. Barr, 842 So.2d 638, 644 (Ala.2002), quoting Gibbs v. Aetna Cas. & Sur. Co., 604 So.2d 414 (Ala.1992); see also Wiggins v. Risk Enterprise Management Limited, 14 F.Supp.2d 1279 (M.D.Ala.1998). In McDonald, like Griner, the carrier was found to have purposefully engaged in a pattern of delay in paying medical bills and other benefits for a period of five years with the intent to pressure the employee into accepting a settlement of his claim. Continental Casualty Insurance Company v. McDonald, supra. at 1212-1216. [Emphasis added]. The defendant Continental Casualty was unable to give a reasonable explanation for the delays and was found to have attempted

to coerce the plaintiff into settling his claim.  Id.

Plaintiff Emory Brown's case is clearly distinguishable from Griner and McDonald.  Even under the best factual scenario for the plaintiff's case, a period of only twenty days passed between the time when the defendant Claims Management became aware that the plaintiff would need surgery and the time when the surgery was actually approved [that is, the time period between the date of the plaintiff's initial appointment with Dr. Howorth, October 27, 2004, and November 16, 2004, which Amy Miller testified was the date on which Dr. Howorth's office was notified that the surgery had been approved by the defendant Claims Management].  Incidentally, the defendant again points out that Ms. Miller's undisputed testimony establishes that Dr. Howorth's office sent the surgery request to Claims Management on November 15, 2004, and Claims Management approved the request on November 16, 2004.  Twenty days is a far cry from the period of five years which elapsed in both Griner and McDonald.

Moreover, while the defendant-insurers in both Griner and McDonald were found to have intentionally withheld approval of treatments and other benefits over a long-term period in an effort to pressure the claimants into settling their respective claims, there is no evidence that the defendant Claims Management acted with the intent to withhold approval of treatments or pressure the plaintiff Emory Brown into settling.  There has been no testimony or other evidence from the plaintiff or any other

source evidencing an attempt to coerce the plaintiff into a settlement.  To the contrary, the evidence is undisputed that the defendant Claims Management paid for several doctors appointments and an MRI prior to the plaintiff's surgery, and continued to pay for treatments after the surgery.  The plaintiff testified as follows:

> Q.     Okay.  And as far as you know, the emergency room bill for the first time you got hurt -- for the day of the injury, that was paid by workers' comp; right?
>
> A.     Yeah, they paid for that.
>
> Q.     All right.  And they paid all the bills for Dr. Shirah?
>
> A.     Yeah.
>
> Q.     And they paid for the MRI?
>
> A.     Yeah.
>
> Q.     Okay.
>
> A.     Well, they sent me some of the bills, and I just took them to Wal-Mart.
>
> Q.     Okay.  Well, I understand.  But they ultimately paid.
>
> A.     Yeah, they ultimately paid.
>
> Q.     You didn't have to pay any of that out of your pocket?
>
> A.     Huh-uh, they took care of that.
>
> Pl. dep. p. 66, ln. 21 - p. 67, ln.17.
> .....
>
> Q.     Now, the surgery was paid for by comp?

31

A.      Yeah.

Q.      You never got a bill?

A.      Oh, yeah, I got several bills.

Q.      But you sent it --

A.      I took it to Wal-Mart, and they took care of it.  They sent them to me, though.  But I took it to Wal-Mart, and they eventually paid it.

Pl. dep. p. 95, ln. 12 -21.
......

Q.      Did you get several prescriptions?

A.      Oh, yeah.

Q.      Where did you have your prescriptions filled?

A.      Wal-Mart.  They paid for it.

Pl. dep. p. 120, ln. 7-12.
.....

Q.      All right.  Workers' comp -- I may have asked you, I may not have.  If I did, I apologize.  But workers' comp paid for all your physical therapy too; right?

A.      Yeah.

Q.      Okay.

A.      They paid for that and the medicine, whatever I had to have.

Pl. dep. p. 139, ln. 10-18.

Clearly, the defendant Claims Management was making a good-faith effort to handle the plaintiff's claim and was not attempting to deny treatment in an effort to force a settlement as had the defendant-insurers in Griner and McDonald. To the contrary, the defendant Claims Management approved surgery for the plaintiff within 24-hours of receiving the faxed surgery request form from Dr. Howorth's office. (Miller dep., 45, ln. 11-19). The plaintiff's testimony indicates that during the period between his initial appointment with Dr. Howorth on October 27, 2006, and his surgery being approved on November 16, 2006, Ms. Heppes informed him on more than one occasion that any delay in processing his surgery request was not due to any inattention on her part but due to the fact that she had not received the necessary paperwork from Dr. Howorth to approve his surgery.

Q.    But you contend that you talked to her and she said that she wouldn't let you have surgery until two other doctors looked at it?

A.    Yeah. She said we want -- and she said you need to get Howorth to send me everything he's got, MRI's and everything. We need two more doctors to look at it.

Q.    And did she say that she wanted to send you to a different doctor, or did--

A.    No. She just said she wanted two more doctors to look at them.

Q.    Did she tell you where those doctor were going to be?

A.    She didn't tell me where they was at. She just said that I needed to get in touch with Howorth and get him to send her everything

33

that he had on me so she could get two more opinions.

Q.      Okay.  And did you talk to Dr. Howorth and tell them to send everything?

A.      Yeah.  And they kept claiming he wasn't sending them the right stuff.  So, I had to call him back.  Then I'd call her back.  They finally send -- you know, finally sent her what she wanted because she finally okayed it on the 29th.

Q.      Okay.  How many times did you call -- did you ever go back to Dr. Howorth's office and ask him, "Will you please give me the records so I can send them"?

A.      No, I didn't.  I just -- he just told me he'd take care of it and send her what she had to have.  And every time I'd call her and ask her did she get what he sent, she said, "No, he didn't send her everything she needed."  And I'd call him back and ask him please send her whatever she needs.  Call her and find out what she needs and please send it to her so I could get the surgery done.

Pl. dep. p. 73, ln. 11 - p. 75, ln. 9 [emphasis added].
.....

Q.      Okay.  Okay.  Do you know how many times Ms. Heppes had to call Dr. Howorth to ask them to please send the appropriate --

A.      I don't really know how many times she called.  I called every week, and she said they hadn't never sent her what she needed.

Q.      Okay.  And after she would tell you that, you would call Dr. Howorth?

A.      Yeah.

Q.      And Dr. Howorth would say, "Well, we've already sent everything"?

34

A.    "We've sent everything we've got."

Q.    And then you would do what, call her back.

A.    Call her back.  And she'd say they still ain't got everything.  I don't know why she kept doing it.

Pl. dep. p. 76, ln. 8 - p. 77, ln. 4 [emphasis added].

The plaintiff stated that he didn't "know why she [Ms. Heppes] kept doing it [telling him that she had not received the paperwork necessary to approve his surgery request].  The reason for this is simple:  Ms. Heppes kept telling him this because it was the truth.  Amy Miller's testimony confirms that Ms. Heppes did not receive the necessary surgery request forms from Dr. Howorth's office until November 15, 2006, nineteen days after the plaintiff's initial appointment with Dr. Howorth.

Q.    On the first page of Exhibit 2, which appears to be the fax cover sheet that's labeled "Surgery Request," there's a handwritten note down towards the bottom right-hand corner as you are looking at the page.  Is that your handwriting?

A.    Yes.

Q.    What does it say?

A.    "11/15/04 faxed" and my initials.

Q.    Okay.  Does that indicate that you faxed that surgery request form on that date, 11/15/04?

A.    Yes.

Q.    Is there any other record that you have of any other faxes that you sent to Claims Management of that surgery request form?

35

A.    No.

Q.    Okay.  Then if we go back to Exhibit 1, the precert information sheet, it shows that the surgery was approved on 11/16/04; is that correct?

A.    Right.

Q.    And that's in your handwriting at the bottom?

A.    Yes.

Q.    So just to construct a time line here from what we have gone over so far -- and I'll just ask you to tell me if this is correct -- it appears that Emory Brown first presented for treatment on October 27th, 2004 --

A.    Right.

Q.    -- at Alexander  City Orthopaedics?

A.    Right.

Q.    Okay.  And on October 27, 2004, you made contact with Victoria at Claims Management?

A.    Yes.

Q.    On October 27, 2004, there's a record of a fax sent from Claims Management?

A.    Yes.

Q.    And that fax is a surgery request form?

A.    Yes.

Q.    That fax was filled out, dated and signed by Dr. Howorth on October 30, 2004; is that correct?

A.    Yes.

Q.    And then there's a note on Defendant's Exhibit No. 2 that you faxed the surgery request back to Claims Management on November 15, 2004?

A.    Yes.

Q.    And on Defendant's Exhibit No. 1, there's a note that the surgery was approved on November 16, 2004?

A.    Right.

Dep. of Amy Miller, p. 30, ln. 13 - p. 32, ln. 11.

Viewing all evidence in the light most favorable to the plaintiff, it is readily apparent that the conduct of the defendant Claims Management does not approach the minimum standard for a viable outrage claim in the employer-employee context, as established by the Alabama Supreme Court in McDonald and Griner. The overwhelming majority of reported outrage cases affirm summary judgment or other adjudication in favor of the defendant employer. See, e.g., House v. Corporate Services, Inc., 882 F.Supp. 161 (M.D.Ala.1995), (no outrageous conduct found where plaintiff merely asserted general allegations of delay, refusal to pay benefits, and refusal to approve treatment); Gibson v. Southern Guaranty Ins. Co., 623 So.2d 1065 (Ala.1993), (summary judgment in favor of the defendant affirmed where the plaintiff did not receive a neuro-psychological evaluation for nine months due to

misunderstanding, delay, and breakdowns in communication with defendant-insurance carrier); Farley v. CNA Ins. Co., 576 So.2d 158 (Ala.1991), (outrageous conduct found not to exist, despite evidence that defendant's adjuster was unsympathetic, bills were not timely paid, and plaintiff "was given the runaround"); Wooley v. Shewbart, 569 So.2d 712 (Ala.1990) (trial court's denial of defendant's summary judgment motion reversed and rendered in favor of the defendant because outrage found not to exist where the claim of improper conduct was that defendant denied the plaintiff's surgical request for no reason). Plaintiff Emory Brown's case falls right into line with these many reported cases which fell short of the high bar required to state a cause of action for outrage. The plaintiff's attempt to manipulate the facts of this case in an effort to create an outrage claim is disappointing. This is clearly not an outrage claim no matter how liberally the testimony is viewed. Summary judgment as to this count is proper and the defendant respectfully requests that it be granted.

III.    The Plaintiff's Claim For Suppression Of Material Facts Fails As A Matter Of Law To State A Claim For Which Relief Can Be Granted.

As is the case with a claim for intentional fraud, in order to go to a jury on a suppression claim, a plaintiff must present evidence of suppression that, if accepted and believed by the jury, would qualify as clear and convincing proof of fraud. Soti v. Lowe's Home Centers, Inc., supra. at 923. The elements that the plaintiff must prove to this standard include: (1) that the defendant had a duty to disclose the existing

38

material fact; (2) that the defendant suppressed that material fact; (3) that the suppression induced the plaintiff to act or to refrain from acting; and (4) that the plaintiff suffered actual damage as a proximate result. Id. at 923. See also, Upton v. Drummond Company, Inc., 762 So.2d 373, 378 (Ala.Civ.App.2000), citing State Farm Fire & Cas. Co. v. Owen, 729 So.2d 834, 837 (Ala.1998).

The plaintiff in his complaint and brief states that the defendant Claims Management had a duty to disclose truthful information to the plaintiff based on the following special circumstances:  (1) the defendant was the only one receiving medical reports on the plaintiff; (2) the plaintiff's medical care was controlled by the defendant; (3) the defendant had before it Dr. Howoth's recommendation that the plaintiff have surgery immediately; and (4) the defendant knew if surgery was not done immediately irreparable harm would result.  (Complaint, Count Three; Pl. Brief, pp. 32-33).  The plaintiff then alleges that the defendant Claims Management violated its duty to the plaintiff by suppressing the following information:  (1) that the defendant did not have the plaintiff's treatment evaluated by an independent medical examiner; (2) that "plaintiff" [he actually means defendant] had no evidence in its files to deny treatment as recommended by the plaintiff's doctors; and (3) there was no medical basis for the denial of care to the plaintiff.  (Complaint, Count Three; Pl. Brief, pp. 33-34).  The plaintiff then claims that he relied on the representations made by the defendant Claims Management, and had the allegedly suppressed information been made known to him

"he would have sought other care and treatment immediately." (Complaint, Count Three; Pl. Brief, p. 34). The plaintiff's brief cites no case law in support of his position and does not directly address any of the authority cited in the defendant's brief in support of its motion for summary judgment.

Viewing the evidence in the light most favorable to the plaintiff for summary judgment purposes, and assuming for purposes of this motion only that a duty to disclose did in fact arise from the relationship between the plaintiff and the defendant Claims Management, the plaintiff still fails to prove by clear and convincing evidence that (1) the defendant Claims Management suppressed any material fact; (2) that the plaintiff acted or refrained from acting based on any alleged suppression; and (3) that the plaintiff was damaged as a result of any suppression of material fact by the defendant Claims Management as alleged.

A.    The Plaintiff Has Not Proved By Clear And Convincing Evidence
      That Material Facts Were Suppressed.

The plaintiff claims that three "facts" were suppressed by Ms. Heppes and defendant Claims Management:  (a) "[t]hat the Defendant did not have Plaintiff's care and treatment reviewed by an independent medical examiner"; (b) "[t]hat the Plaintiff [sic, should read "the Defendant"] had no evidence in its files to deny the Plaintiff medical care and treatment as recommended by Dr. Holworth [sic] and Dr. Shirah"; and (c) "that there was no medical basis for denial of care and treatment to the plaintiff

40

as recommended by Dr. Holworth [sic] and Dr. Shirah.  These "facts" were never suppressed as claimed by the plaintiff.

In regard to the plaintiff's allegation that Ms. Heppes suppressed that the defendant Claims Management "did not have Plaintiff's care and treatment reviewed by an independent medical examiner," the key word is "did," which refers to actions in the past tense.  The effect of this language is to imply that Ms. Heppes suppressed something to the plaintiff in the past, as if she made the statement, "Claims Management had your treatment reviewed by a doctor."  A more accurate representation of the suppression as alleged by the plaintiff in his pleadings, deposition, and affidavit would put Ms. Heppes representations in the present tense (i.e., "We are currently having your treatment reviewed by a doctor") or the future tense (i.e., "We will have your treatment reviewed by a doctor.").  There is a point to these semantics and this is it:  if Ms. Heppes told the plaintiff anything in relation to having his treatment review by a doctor, it was in the future tense, as in this review is something that Claims Management will do as part of our surgical approval process once we receive all of the necessary information from Dr. Howorth.

Ms. Heppes testified that it was Claims Management protocol to have most claims (including the plaintiff's) reviewed by CorVel, an outside company that assists Claims Management with assessing and certifying surgery request.  (Heppes dep. p. 181, ln. 23 - p. 182, ln. 15).  Ms. Heppes testified that she did not follow through with

this practice in the plaintiff's case because it had taken a long time for Dr. Howorth's office to send the necessary paperwork. (Heppes dep. p. 161, ln. 20 - p. 163, ln. 9). As such, Ms. Heppes did not suppress that she was not going to have the plaintiff's claim reviewed because when she made the statements to the plaintiff she fully intended to have his claim reviewed according to the defendant's protocols. As she testified, it was only after the delay in receiving the necessary paperwork from Dr. Howorth that she went to her superior and requested that the claim be expedited. (Heppes dep. p. 161, ln. 20 - p. 163, ln. 9).

In regard to the plaintiff's allegation that Ms. Heppes suppressed that there was no evidence on file to deny the plaintiff medical care and treatment, the plaintiff has admitted that Ms. Heppes told him on several occasions that she had not received adequate information from Dr. Howorth's office to approve or deny the plaintiff's claim. (Heppes dep., p. 73, ln. 11 - p. 75, ln 9; p. 76, ln. 8 - p. 77, ln. 4). As this information was communicated by Ms. Heppes to the plaintiff, it was not suppressed.

Similarly, in regard to the plaintiff's assertion that there was no medical basis for denial of care and treatment to the plaintiff as recommended by Dr. Howorth and Shirah, it must be restated that the plaintiff's testimony confirms that Ms. Heppes informed him that she had no medical basis for approval or denial of his claim because she simply did not have the information she needed to process his claim. (Heppes dep., p. 73, ln. 11 - p. 75, ln 9; p. 76, ln. 8 - p. 77, ln. 4). The testimony of Ms.

42

Miller that Ms. Heppes did not receive the surgical request paperwork until November 15, 2004, supports this assertion. (Miller dep., p. 30, ln. 13-23; p. 45, ln. 11-17). Again, the information was communicated by Ms. Heppes to the plaintiff and therefore was not suppressed.

It is clear from the discussion above that all of the information alleged by the plaintiff to have been suppressed by the defendant was in fact disclosed. The Alabama Supreme Court has stated, "Where the record indicates that the information alleged to have been suppressed was in fact disclosed, and there are no special circumstances affecting the plaintiff's capacity to comprehend, the plaintiff cannot recover for suppression."  Ex parte Alfa Mut. Fire Ins. Co., 742 So.2d 1237, 1243 (Ala.1999). Therefore, the defendant's motion for summary judgment is due to be granted.

B.     The Plaintiff Has Failed To Demonstrate By Clear And Convincing Evidence That He Either Acted Or Failed To Act To His Detriment Due To The Alleged Suppression Of The Defendant.

Additionally, the plaintiff has failed to demonstrate by clear and convincing evidence that he either acted or failed to act to his detriment due to the alleged suppression by the defendant.  The plaintiff speculates that "had he been told the facts alleged to have been suppressed he would have sought legal help and would have immediately secured the necessary medical care and treatment which should have been provided to him." (Pl. brief, p. 42).  The plaintiff made no mention in his deposition

43

on April 10, 2006, that he would have sought legal help had he known of the information alleged to have been suppressed. The plaintiff attempted to save this issue in his affidavit, filed contemporaneously with his brief on September 21, 2006, that he "believed" Ms. Heppes and consequently "did not go to see a lawyer to force them to get my surgery immediately." (Pl. aff., p. 4, Exhibit 2 to evidentiary submission attached to pl. brief). This vague assertion by the plaintiff that somehow a lawyer could have "forced" Claims Management to immediately approve surgery is speculative and nonsensical. It hardly amounts to clear and convincing proof that the plaintiff acted or refrained from acting based on any alleged misrepresentations by Ms. Heppes.

The plaintiff also asserted in his affidavit that "I certainly would have immediately sought other medical care and treatment from any other source instead of waiting around depending on her to get medical care and treatment for me," and, "If I had been told the truth … I certainly could have undertaken action to try to get myself taken care of by another source immediately." (Pl. aff., p. 4-5, Exhibit 2 to evidentiary submission attached to pl. brief). These statements contradict a third statement by the plaintiff in his affidavit in which he states, "I was never in a position to get any care or treatment for myself concerning my workmen's compensation claim other than what was allowed by CMI." (Pl. aff., p. 3, Exhibit 2 to evidentiary submission attached to pl. brief). As stated earlier in this brief, "A party is not allowed to directly contradict prior sworn testimony to avoid the entry of a summary

judgment."  Continental Eagle Corp. v. Mokryzycki, 611 So.2d 313, 317 (Ala.1992), citing Doe v. Swift, 570 So.2d 1209, 1214 (Ala.1990).  The plaintiff cannot have it both ways.  He cannot state that that on the one hand he was in no position to seek medical care, but on the other hand he would have sought alternative care in order to get immediate treatment.  Due to the plaintiff's inconsistent testimony, he has failed to present clear and convincing evidence of reliance and the defendant's motion for summary judgment is due to be granted.

C.    The Plaintiff Was Not Damaged.

Finally, the plaintiff has failed to prove by clear and convincing evidence that he has been damaged as a result of the actions of the defendant.  As stated in the previous section of this brief addressing the plaintiff's claim for Fraud (pp. 21-28), the plaintiff has provided absolutely no medical evidence to support his claim of causation and damages.  He has declined to identify a medical expert and has not deposed or provided affidavits from any of his own treating physicians.  The only "evidence" that has been provided is hearsay testimony from the plaintiff concerning the opinions of his medical providers, most significantly Dr. Howorth.

The defendant will not outline those instances of hearsay as they have already been covered earlier in the defendant's brief at pages 22-23.  Neither will the defendant belabor the court with a recital of its previous argument contained in pages 21-28.

45

Suffice it to say that the United States District Court for the Middle District of Alabama has clearly stated its position that "inadmissible hearsay cannot be properly used to oppose summary judgment, especially if it is not shown that admissible evidence to the same effect will be available at trial." Reeves v. Thigpen, supra. at 1165 (M.D.Ala.1995).  This position was recently reaffirmed by Chief Judge Fuller in the unpublished opinion in King v. Kirkland's Stores, Inc., 2006 WL 2239203 (M.D.Ala.2006).

As stated previously, the plaintiff is attempting to rely on inadmissible hearsay to prove the element of damages and thereby support his opposition to the defendant's motion for summary judgment.  Moreover, none of the exceptions to the hearsay rule are applicable to any of the statements offered by the plaintiff in support of his motion in opposition.   The plaintiff has had the opportunity to provide this court with appropriate depositions and affidavits, and he has failed to take advantage of this opportunity.  Rather, he has attempted to utilize inadmissible hearsay to create issues of fact for the court's consideration.  This is not proper, and the court pursuant to Reeves and King cannot consider such testimony.   Therefore, as stated previously in the section of this brief addressing the plaintiff's claim for fraud, the plaintiff has failed to present this Court with any evidence to support his contention that he has been damaged by any action of this defendant.  Accordingly, the defendant's motion for summary judgment must be granted.

IV.    The Plaintiff's Claim For Negligence Is Barred By The Exclusivity
Provisions Of The Workers' Compensation Act.

The plaintiff argues that his claim for negligence should survive summary judgment because the facts evidence wanton conduct on the part of the defendant Claims Management.   The plaintiff also concludes, evidently, that willfulness and negligence are one in the same.   The defendant Claims Management absolutely disagrees and shows the plaintiff could not be more wrong.   The defendant Claims Management contends that the entirety of the plaintiff's argument addressing the negligence claim (pages 46 through 50) should be stricken as they do not address or support the cause of action for negligence the plaintiff pled in his amended complaint. It is clear, from reviewing the plaintiff's amended complaint, the plaintiff did not assert a cause of action for willfulness.   His amended complaint alleges negligence on the part of the defendant Claims Management.

Causes of action for negligence are absolutely barred by the exclusivity provisions of the Alabama Workers' Compensation Act.   See, Powell v. USF&G, 646 So.2d 637 (Ala. 1994)(finding that the trial court properly dismissed worker's negligence complaint for failing to assert a cause of action for willfulness and intentional conduct).   Section 25-5-11(a) was amended in 1985 to provide that workers' compensation insurance carriers and servicers are liable only for willful conduct which proximately caused injury to an employee.   However, the plaintiff, in his

amended complaint has only alleged negligence and has failed to allege willful conduct. At the outset of this case, a scheduling order was entered providing that any amendments to the pleadings made by December 30, 2005. (See Uniform Scheduling Order, Doc. number 8, Section 4). The plaintiff filed a motion for leave to file an amended complaint and an amended complaint on December 29, 2005. (See Doc. number 12 and exhibit thereto). The amended complaint added "COUNT FOUR COMPLAINT FOR NEGLIGENCE". Id. The plaintiff has admitted in his response to the plaintiff's motion for summary judgment, that his fourth cause of action was for negligence only. (See plaintiff's brief at page 46.) The plaintiff had ample opportunity to amend the pleadings to assert a cause of action for willfulness if that is what he intended to do. The plaintiff should not be allowed to cure his failure to plead a cause of action for willfulness by responding to the defendant's motion for summary judgment on a claim of negligence. If the plaintiff wanted to sue for willfulness, he should have done so prior to December 30, 2005. In his brief, the plaintiff grotesquely speaks from both sides of his mouth. In one place he openly admits his amended complaint was for negligence only. (See plaintiff's brief at page 46.) He later states his amended complaint clearly sets forth a jury question as to willfulness because the ad damnum clause claimed punitive damages. (Plaintiff's brief p. 50). If the court will look at the entirety of the plaintiff's amended complaint, it will see the word "willfulness" does not appear! Further, if the court will compare the ad damnum

48

clause in the amended complaint to the ad damnum clauses contained in the original complaint, it will find them to be identical to one another! An ad damnum clause is not an allegation, it is a claim for relief. If the plaintiff had intended to sue for willfulness, he should have called Count Four "Complaint for Willfulness" instead of "Complaint for Negligence."

In his brief at page 47, the plaintiff cites the case of Jones v. Norfolk Southern Railway Co., 787 So.2d. 699 (Ala. 2000) for the proposition that if there is substantial evidence to support a breach of duty, a question of wantonness should go to the jury. (The defendant Claims Management is not sure where this fits into the equation since the question is whether the claim of negligence is the same thing as a claim for willfulness.) A cursory glance of the referenced case reveals that the plaintiff is citing to the dissenting opinion. In Jones, the Supreme Court of Alabama affirmed the trial court without opinion. The plaintiff apparently intends to have this court believe that the dissenting opinion is the holding of the court. That is clearly not accurate. A more detailed review of the dissenting opinion, however, actually strengthens the position espoused by the defendant Claims Management. The dissenting opinion in Jones, supra, cites the case of Hamme v. CSX Transportation, Inc., 621 So.2d. 281 (Ala. 1993). Hamme dealt with a cause of action that was filed alleging both negligence and wantonness. At the close of the plaintiff's case, the trial court directed a verdict in favor of the defendants on the wantonness claim but allowed negligence to go to the

49

jury.  Following a defendant's verdict on the negligence claim, the plaintiff appealed questioning the trial court's directing of the verdict on the wantonness claim only.  The Hamme case clearly solidifies the opinion of the defendant Claims Management in this case.  If the plaintiff wanted to sue for both negligence and willfulness, he should have done so when he had the opportunity.  It is too late now and he should not be afforded the opportunity to right his wrong.

The plaintiff goes to great extremes arguing that the negligence count should go to a jury because the defendant Claims Management has failed to show there was no willfulness.   While it denies any negligence on its part, the defendant Claims Management has no obligation to make such a showing in this case.   The plaintiff unquestionably brought a count for negligence as it is related to the handling of a worker's compensation claim.  Section 25-5-11(a) of the Workers Compensation Act clearly provides that a party who occupies a position like that of the defendant Claims Management can only be sued for willful conduct, and therefore, the Plaintiff's negligence claim is barred.

Further support for the defendant Claims Managements' position is found in a comparison of the two causes of action.  Willfulness involves a state of mind entirely different from negligence.  Negligence is the failure to exercise reasonable, ordinary care; that is, such care as a reasonably prudent person would have exercised under the same or similar circumstances.  1 Alabama Pattern Jury Instructions Civil No. 28.01

(2d ed. 1993). The state of mind associated with negligence is usually characterized as inattention, thoughtlessness, heedlessness, or a lack of due care. Rommell v. Automobile Racing Club of America, Inc., 964 F.2d 1090 (11th Cir.1992).

Willfulness involves the conscious doing of an act or omission of a duty, under knowledge of existing conditions, coupled with a design or purpose to inflict an injury. 2 Alabama Pattern Jury Instructions Civil Nos. 29.01, 29.03 (2d.ed.1993). Willful conduct therefore includes "a purpose or intent or design to injure another; and where a person, with knowledge of the danger or peril to another consciously pursues a course of conduct with a design, intent and purpose of inflicting injury, then he is guilty of willful conduct." §25-5-11(c)(1), Code of Alabama (1975). See, e.g, Barron v. CNA Ins. Co., 670 so.2d 889 (Ala.1996). Clearly, negligence and willfulness are separate animals altogether.

The plaintiff cites to the allegations of his amended complaint in support of his argument that he sued the defendant for willfulness. A review of the allegations requires a different conclusion. The plaintiff alleged a breach of duty. He said nothing of an intentional breach of a duty, he said nothing of any conscious pursuing of a course of conduct designed to cause injury.

As previously stated in the defendant's brief in support of its motion for summary judgment, the Alabama Supreme Court in Gibson v. Southern Guaranty Insurance Company, 623 So.2d 1065 (Ala.1993), held that the plaintiff's claims

alleging negligence and wantonness against the medical case coordinator assigned to his file by his employer's workers' compensation carrier's contractor were barred by Section 25-5-11.   More recently, the United States District Court for the Southern District of Alabama reaffirmed this principle under very similar factual circumstances. Raye v. Employer's Insurance of Wausau, 345 F.Supp.2d 1313, 1318 (S.D.Ala.2004). In Raye, the Court ruled that the plaintiff's allegations of negligence failed to state a claim against the employee assigned to the plaintiff's file by the plaintiff's employer's workers' compensation carrier's contractor.   Id.

The plaintiff concedes that "the Defendant herein correctly cites to the court that the Plaintiff can state a cause of action only for willful conduct..."   (Plaintiff's brief at p. 47).   However, the plaintiff inexplicably then argues, "There are no facts cited by the Defendant to support its claim that the conduct of CMI was not willful conduct." (Plaintiff's brief at p. 48).   The defendant submits that willfulness has not been pled by the plaintiff in his amended complaint, and the defendant is under no obligation to exhaust the court's time arguing a moot point.   The plaintiff states the defendant has failed to carry its burden as the party moving for summary judgment.   This is completely false.   The defendant has stated, and the plaintiff has admitted, that the amended complaint was for negligence.   The defendant has presented statutory and caselaw establishing that negligence is absolutely barred in this case stemming from a workers compensation injury.   The plaintiff did not sue the defendant for willfulness,

therefore there is no burden on the defendant to disprove a cause of action which has never been brought before the court.  Surely the plaintiff does not argue that it is sufficient to attempt to initiate a cause of action alleging willful conduct in the response brief to the defendant's motion for summary judgment, following the passage of over fifteen months since the filing of the complaint and over nine months since the expiration of the deadline to amend pleadings.

The plaintiff has attempted to confuse the distinction between negligence, and willfulness to conceal his failure to plead the requisite cause of action against this defendant.  The Court should not lose sight of the single fact that the concepts of negligence and willfulness (like negligence and wantonness) are as "unmixable as oil and water" and are distinct causes of action. See, Ex parte Anderson, 682 So.2d 467 (Ala. 1996). As they are distinct causes of action, the plaintiff had the obligation to assert a claim for willfulness against the defendant Claims Management in his initial complaint or his amended complaint.

The plaintiff failed to meet his obligation to this Court, and he should not be awarded for this error by allowing him to pursue that which he failed to plead. It is clear that Count Four of the plaintiff's Complaint alleges negligence, and only negligence, against the defendant Claims Management, and it is equally clear that such a claim is preempted by §25-5-11 of the Workers' Compensation Act. Therefore, as the plaintiff's negligence claim is absolutely barred by the exclusivity provisions of the

Alabama Workers' Compensation Act, this court should feel absolutely compelled to grant the defendant's motion for summary judgment as to negligence.

V.    CONCLUSION

The plaintiff, Emory Brown, has stated four causes of action against the defendant, Claims Management, in general alleging that a delay in processing his request for surgical care proximately caused a less than satisfactory surgical outcome.

Summary judgment is due to be granted with respect to the plaintiff's allegation of Fraud because the plaintiff has failed to show by clear and convincing evidence that he reasonably relied on the alleged representations of the defendant's agent, Ms. Heppes, that surgery was not medically necessary and there were alternative forms of treatment available.   To the contrary, the plaintiff never exhibited any conduct to indicate that he relied on the alleged statements of Ms. Heppes

Summary judgment is due to be granted with respect to the plaintiff's allegation of Outrage because the facts of his case clearly do not reach the high threshold required by Alabama courts to state a claim for outrage.   The plaintiff admitted that the defendant Claims Management paid numerous medical expenses on his behalf and there was no evidence that the defendant was attempting to withhold treatment in an effort to pressure the plaintiff into settling his workers' compensation claim.

Summary judgment is due to be granted with respect to the plaintiff's allegation of Suppression of Material Facts because the plaintiff fails to show by clear and

convincing evidence that the defendant did in fact withhold information from the plaintiff.  To the contrary, the defendant fully disclosed to the plaintiff that his claim could not be evaluated until necessary information was received from the office of Dr. Howorth.  Moreover, the plaintiffs contention that had there been full disclosure he could have explored alternative medical and legal remedies to receive more immediate treatment is highly speculative.

Summary judgment is due to be granted with respect to the plaintiff's allegation of Negligence because that cause of action is clearly barred by the exclusivity provisions of the Workers' Compensation Act.  Causes of action for the tort of Willful Conduct are not barred by the Workers' Compensation Act, but the plaintiff did not plead such a cause of action.

Finally, all of the above-stated causes of action have the common element of injury to the plaintiff.  The plaintiff in this case has provided no admissible proof of injury, and in addition has failed to demonstrate that any injury that he may have incurred was proximately caused by the actions of the defendant.  The plaintiff's reliance on the hearsay statements of his physician are inadmissible, and as such all counts of the plaintiff's complaint must fail for want of damage in addition to the other flaws stated herein.

This 28th day of September, 2006.

Respectfully submitted,

CARLOCK, COPELAND, SEMLER
& STAIR, LLP

BY:\_\_\_\_/s/ Jeffrey A. Brown_____
            Jeffrey A. Brown
            Attorney Code: BRO132

            \_\_/s/ Archie I. Grubb, II_____
            Archie I. Grubb, II
            Attorney Code:  GRU015
            Attorneys for Defendant, Claims Management
            Post Office Box 139
            Columbus, Georgia 31902-0139
            (706) 653-6109

CERTIFICATE OF SERVICE

I, Jeffrey A. Brown, do hereby certify that I am of counsel for defendant Claims Management, Inc. and that I have served a copy of the above and foregoing

DEFENDANT CLAIMS MANAGEMENT, INC.'S BRIEF IN REPLY TO THE PLAINTIFF'S BRIEF IN OPPOSITION TO THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT upon all counsel of record via electronic filing and by depositing a true copy of same in the United States mail, postage prepaid, in an envelope addressed to opposing counsel as follows:

John A. Tinney, Esquire
Post Office Box 1430
Roanoke, Alabama  36274

This 28th day of September, 2006.

___/s/ Jeffrey A. Brown_____
Of Counsel for Defendant, Claims Management, Inc.

2050607v.1